STATE OF IOWA v. HARRIET GREENWAY *et al.*, Appellants.

**Selling Liquor.** Miller's Code, 1543, allows injunctions to restrain illegal liquor selling. By chapter 63, section 19, Acts of the Twenty-fifth General Assembly, all who so sell are liable to "all penalties" fixed by the prohibitory act. *Held*, injunction is a "penalty" in the meaning of such enactments.

"**Resident Freeholder**" as used in the Iowa liquor laws means a resident of the municipality in which the selling is carried on.

**Measuring Distances.** Distance limits fixed in Iowa liquor laws must be measured in a direct line, and not by the traveled route.

*Appeal from Mahaska District Court.*—HON D. RYAN, Judge.

WEDNESDAY, DECEMBER 12, 1894.

THIS is an action in equity for an injunction to restrain the defendants from keeping and maintaining a saloon in the city of Oskaloosa. The cause was submitted in the district court on an agreed statement of facts. A temporary injunction was allowed by the court, and defendants appeal.—*Affirmed*.

*Bolton & McCoy* and *Seevers & Seevers* for appellants.

*Byron W. Preston* for the state.

ROTHROCK, J.—It is not necessary to set out the agreed statement of facts in full. The defendants claim they have the right to keep and maintain the saloon by virtue of chapter 62 of the Acts of the Twenty-fifth General Assembly, entitled, "An act to tax the traffic in intoxicating liquors, and to regulate and control the same." No question is made that the voters and

city council of the city of Oskaloosa took such action as authorized the sale of intoxicating liquors under the provision of said law.

I. It is claimed in behalf of the state that the defendants have no right to maintain their saloon because they have at no time obtained consent to establish the saloon from "all the resident freeholders owning property within fifty feet of the premises where said business is carried on," as required by section 17 of said act. It appears that there are two buildings on lots within fifty feet, the consent of the owners of which has not been obtained. All of the owners of said property are nonresidents of the city of Oskaloosa. The owner of one of the lots is a resident of Jefferson county, in this state. The other building is owned in common by two persons, one of whom is a nonresident of the state, and the other resides in Mahaska county, but outside the corporate limits of the city of Oskaloosa. It is contended that the term "resident freeholder" should be construed to mean all residents of this state. We think this question depends altogether upon the connection in which it is used in the act. The purpose of the act is to permit the sale of intoxicating liquors within such cities as, by the petition of the voters and the action of the city council, take proper steps to authorize the permit. In cities of the population of Oskaloosa the residents of the county or state have no right to make objection to the granting of such permits. It is provided in section 17 of the act that "the person appearing to pay the tax shall file with the county auditor a certified copy of a resolution regularly adopted by the city council consenting to such sales and a written statement of consent from all the resident freeholders owning property within fifty feet of the premises where the said business is carried on." It is also required in said section that there shall be "a written statement of

consent signed by a majority of the voters residing in said city who voted at the last general election." We think, when these and other parts of the law are considered, there is no question that "resident freeholders" should be held to mean residents within the corporate limits of the city, and that it is not necessary to have the consent of any nonresidents of the city.

II. The act further provides that "in no case shall said business be conducted within three hundred feet of any church or school building." The fact is that the congregational church in the city is within three hundred feet of the saloon, in a direct line, but that it is more than that distance by the traveled way. As bearing upon the question as to what measurement should be adopted, the parties stipulated as follows: "It was conceded in the court below, and is now in the supreme court, that the distance from the nearest part of the church to the nearest part of the saloon building is more than three hundred feet by the nearest and most direct way by the sidewalk or street, but in a direct line from the one place to the other it is less than three hundred feet." Counsel for defendants contend that the measurement by the streets and sidewalks should be adopted. The thought of counsel is that the lawmaking power did not intend that the distance should be ascertained by a straight line crossing lots and through buildings, but by the way usually traveled in going from one building to the other. It is true that such is the method adopted in computing mileage for the travel of witnesses and jurors. And in *Smith v. Ingraham*, 7 Cow. 419, cited in argument, it was held that the distance between residences of attorneys for the purpose of serving papers should be ascertained by the usual traveled road. We do not think this is the proper rule to be adopted under this statute, and that the distance should be ascertained by an air

line from one place to the other.   It appears to us this is the proper construction of the law, and that any other method would lead to confusion and uncertainty. A statute of Massachusetts provided that "no license shall be granted for the sale of intoxicating liquors in any building or place on the same street within four hundred feet of any building occupied in whole or in part by a public school."   In *Com. v. Jones*, 142 Mass. 573, 8 N. E. Rep. 603, it was held that the distance is to be determined by measuring the nearest point of each house to the other, without any other measurement, and that, where one or both buildings are set back from the line of the street, with walks leading to them, the true measurement is not by the line of the street and walks, but in a direct line from one house to the other.   Our conclusion is that the church was within the prohibited distance.

III.   Lastly, it is contended that an action for an injunction will not lie because it is not so provided in the act under consideration.   It is provided by section 19 of the act that whenever "any of the conditions of this act shall be violated   *   *   *   persons engaged in the sale of intoxicating liquors as contemplated by this act shall be liable to all of the penalties provided for by chapter 6, title 11 of the Code and acts amendatory thereto."   It is not contended that the statute authorizing an injunction is not amendatory of the chapter and title of the Code named in the act.   But it is urged that the decree of a court of equity is not a penalty, and that the use of that word in the act refers to fines and imprisonment, and possibly forfeitures.   The law authorizing an injunction provides that "any citizen of the county where such nuisance exists, or is kept and maintained, may maintain an action in equity to abate and perpetually enjoin the same, and any person violating the terms of an injunction shall be punished as for contempt by a

fine," etc.   Miller's Code, section 1543.   We think, when the whole act of 1894 is considered, that the word "penalties" was not used in a technical sense, but that it should apply to all of the prohibitory features of the statute before that in force for the suppression of the saloon, whether by way of fines or by injunctions and fines for violation thereof.   It is true that the suit in equity for an injunction is not for the infliction of a penalty, or to recover a penalty, but the fine for contempt is really part of the proceeding.   It is the enforcement of the decree, and is highly penal.   The decree ordering a temporary injunction is AFFIRMED.