Supreme Court, Ontario Special Term, April, 1897. Unreported.

In the Matter of the Application of MENZO W. JOHNSTON to Revoke a Liquor Tax Certificate of JOHN H. FOGARTY, et al.

Royal R. Scott, attorney for petitioner.

Hon. John F. Kinney, attorney for respondents.

WERNER, J. This is a proceeding under section 28 of chap. 112 of the Laws of 1896, commonly known as the "Liquor Tax Law" to obtain an order revoking a liquor tax certificate issued on the 11th day of August, 1896, by George N. Parmele, County Treasurer of Ontario county, to John H. Fogarty and John L. Ryan, comprising the firm of Fogarty & Ryan, in the village of Victor, in said county.

Two of the specific grounds enumerated in the statute as sufficient reasons for the revocation of said certificate are definitely set forth in the petition herein in substance as follows:

That there is, upon the same street upon which is located the building occupied by the respondents for traffic in liquors and within two hundred feet of the same, a building which is used and occupied exclusively as a church; and that the respondents did not file, simultaneously with their statement or application for said certificate, the consent in writing of at least two-thirds of the owners of buildings occupied exclusively as dwellings located within two hundred feet of the nearest entrance to the place in which such traffic in liquors was to be carried on.

A third ground now relied upon, and as to which evidence was adduced before the referee, but the facts in relation to which are not set forth in the petition, is that prior to the application for said certificate, John H. Fogarty, one of the respondents, was convicted of being a common gambler under section 344 of the Penal Code.

Subdivision 1 of section 23 of said "Liquor Tax Law" provides that "No person who shall have been or shall be convicted of felony" shall traffic in liquors. Among other statements contained in respondents' application for said certificate is the following:

"10. May the applicant or applicants lawfully carry on such traffic on said premises under said subdivision? Yes."

The fact of Fogarty's conviction is clearly established and the answer to the tenth interrogatory of said statement was manifestly untrue. But section 28 of said Act by which applications for revocation of certificates are authorized to be made, provides that the petition upon which the proceeding for revocation is based, shall state the facts which entitle the petitioner to the relief prayed for. There is no reference in the petition herein to the said conviction of Fogarty and this omission precludes the court from considering that as one of the grounds upon which the certificate issued to the respondents may be revoked.

It is clearly established that there is a building occupied exclusively as a church upon the same street with the building occupied by the respondents for their business of trafficking in liquor, and within two hundred feet thereof, measuring from the nearest entrance of respondents' building to the nearest entrance to said church. The distance between these two points is shown by actual measurement to be one hundred and ninety-two feet. The respondents claim exemption from the prohibition of the statute against traffic in liquors within two hundred feet of a church or

school house by virtue of the provision that said "prohibition shall not apply to a place which is occupied for a hotel nor to a place in which such traffic in liquors is actually lawfully carried on when this act takes effect."

The act became a law on the 23rd of March, 1896. The premises in which the respondents are carrying on their traffic in liquors under said certificate had been used as a hotel for fifteen or twenty years and had been leased to one of the respondents for that purpose about four years prior to the passage of said act. Fogarty had been in continuous possession thereof for that purpose up to the time respondents made appli-cation for said certificate; with the exception of the months of June and July, 1896, during which the hotel was temporarily closed. There is no dispute as to the fact that in March, 1896, the respondent Fogarty occupied the premises in question as a hotel. And this fairly brings the respondents within the protection of the proviso in subdivision 2 of section 24 of said act.

The contention of the petitioner's counsel that the answer of the respondents to the tenth question in the application cannot be true, if the answer to the fourth is correct, or vice versa, proceeds upon the narrow and extremely technical construction that the said fourth answer means that the applicants intended to carry on no other business upon said premises than that of trafficking in liquor. It seems to us that the application must be read as a whole. The fourth question and answer must be read and construed in connection with the third, which describes the property and the purposes for which it is designed to be used. Tested by this rule the answer to the fourth question cannot be said to have been false, any more than is the answer to the tenth so far as said answer is predicated upon the character of the business to be carried on in said premises.

The remaining question for consideration is whether the seventh interrogatory in said application was truthfully answered and whether the consents required by subdivision 8 of section 17 of said act were duly filed. Said interrogatory and answer are as follows:

"7. Is the nearest entrance to the described premises within two hundred feet of the nearest entrance to a building or buildings occupied exclusively for a dwelling, and if so how many owners are there of such building or buildings? Yes. Three (3) owners."

Said subdivision 8 of section 17 requires the filing simultaneously with the application of the consents of at least two-thirds of the owners of the buildings occupied exclusively as dwellings within said prescribed distance of two hundred feet.

The petitioner charges that this answer to the seventh interrogatory above quoted was false in two particulars. First, because there were more than three buildings within said prescribed distance of two hundred feet which were occupied exclusively as dwellings; and second that one of the buildings within said distance, the owner of which executed a consent, was not occupied exclusively as a dwelling and that in either event, the consents of the requisite two-thirds of such owners have not been executed and filed, as required by law. We have, in the discussion up to this point, given to the language of said act what we believe to be a fair and reasonable interpretation. The application of the same rule to the question whether the consents required by subdivision 8 of section 17 were filed, leads us to conclude that the provisions of the law in this behalf were not complied with.

The building marked "vacant" upon the map introduced in evidence is a two-story structure, the first floor of which is designed for and usually occupied as a store, and the upper floor of which is adapted for residence purposes.

The store was actually vacant at the time of the application by the respondents for their certificate; the upper floor was occupied by one Boltwood and his sons as a dwelling. The statute requires the filing of the consents of at least two-thirds of the owners of buildings occupied exclusively as dwellings, the nearest entrances to which are within two hundred feet of the nearest entrance to the premises described in the statement as those in which the traffic in liquor is to be carried on. The building is concededly within the prescribed distance of two hundred feet. The only question to be determined, therefore, is whether it is a building occupied exclusively for a dwelling within the meaning of the statute. In a strictly literal sense the said building was, at the time the act went into effect, occupied exclusively as a dwelling. But this language should not be given its narrowest and most technical interpretation. It should be read in the light of the spirit of the statute. The obvious purpose of this provision is to prohibit the sale of liquors within two hundred feet of dwelling houses unless the consents of at least two-thirds of the owners thereof

are obtained and filed. When this is done, the protest of the owner who does not consent is in vain. But when this is not done, the nonconsenting owner or any other citizen, may assail the validity of the certificate under which the traffic in liquors is carried on. This provision of the statute must, therefore, be held to refer not to the momentary use to which any building within said prescribed distance of two hundred feet may be put, but to its general use, adaptation and construction. A building containing a number of stores may, upon a given day, have a single occupant who uses a room for a dwelling; such occupancy would not, however, determine the character of the building in which his room is located. It would be a business building still and usually occupied as such. A building derives its character and designation from the usual and ordinary purposes for which it is used. This building occupied by Boltwood was designed for and usually used as a store and dwelling and was, therefore, not occupied exclusively as a dwelling.

Taking this building out of the category of dwellings within two hundred feet of the nearest entrance to the respondents' place of business and treating the signature of Jacobs as a nullity, it follows that if respondents' answer to the 7th interrogatory were true, that the consents required by the statute have not been filed, and that the respondents are not entitled to hold said certificate.

It is not contended that the sale of liquors was actually lawfully carried on in the premises of respondents at the time when said act took effect, and they are, therefore, not protected by the exception or proviso contained in said subdivision 8 in section 17. It will be observed that this exception is not as broad as that contained in subdivision 2 of section 24 with regard to churches and school houses. The latter applies to a place which was occupied as a hotel or in which the sale of liquor was actually lawfully carried on when the act took effect; the former only applies to places in which the sale of liquor was actually lawfully carried on when the act took effect.

The premises of Wilbur are concededly within the two hundred feet limit, and the only ground upon which his consent could be deemed unnecessary is that respondent had, without his, the consents of two-thirds of the owners required by the statute. As we have taken the position that the premises occupied by Boltwood were not occupied exclusively as a dwelling it would not

be necessary to further discuss the merits of this application, except for the possibility that our view of this question may be erroneous.

We will, therefore, consider the claim that there were other dwellings within said statutory limit, which were occupied exclusively as dwellings. The evidence discloses that to the north-west of respondents' premises and in an adjoining lot there are two dwelling houses owned by one Gallup, whose consent was not obtained. Measured by the most direct means of communication between said two dwellings and respondents' premises, the nearest entrances are within two hundred feet of each other, but, measured according to the route which would ordinarily be taken by persons going from the premises of one to the premises of the other, the distance would be more than two hundred feet. We have carefully considered this branch of the proceeding and were at first inclined to the view that the measurements should be made according to the route which would be taken by persons in the ordinary course of communication between two points but, upon reflection, we are constrained to hold that this rule would be so uncertain and impracticable as to nullify in many cases the purpose of the statute in this regard. The only certain satisfactory method by which measurements can be made is to proceed in a direct line between the two objective points. This may seem to be, in specific cases, a harsh and even an unreasonable rule, but it is the only one which is consonant with the spirit of the statute and under which an unvarying test can be applied. This view is sustained by decisions construing similar statutes. Commonwealth v. Lyres (142 Mass. 577) ; State v. Greenway (92 Iowa, 475) ; State v. Ex. Comrs. (56 N. J. 411.)

There is still another question which bears upon this feature of the case. Assuming that the true rule of measurement from nearest entrance to nearest entrance is along the usual or ordinarily used path, it is contended by the relator that there are entrances to the rear end and west side of respondents' hotel, which, according to any method of measurement, bring the nearest entrances to the Gallup dwellings within two hundred feet of the nearest entrances of respondents' hotel. If the doors in the rear end and on the west side of said hotel are now entrances within the meaning of the statute, then it must be conceded that this contention is sound. The evidence discloses that before the respondents made their application for the certificate herein, the

knobs were taken off of said door, and the doors were nailed up with ten penny nails, and have at all times remained so. We are inclined to the view that these doors are still entrances within the fair meaning of the statute. Any method of closing entrances which can by slight effort and without general observation, be changed, would throw upon the authorities charged with the enforcement of this law the duty of constant surveillance of each licensed place having such a "closed" entrance. This would be subversive of the letter as well as the spirit of the law. A loose construction of the statute in this regard would encourage every form of evasion and subterfuge which the ingenuity of unscrupulous men could devise.

In the matter of R. H. Macy to compel the granting of a storekeeper's license, it was held by the Appellate Division of the First Department, WILLIAMS, J. writing the memorandum, that a " 'door' not walled or boarded up, but merely closed and locked" * * * "was still an entrance within the statute as fairly construed." In the present proceeding it appears, as stated, that the door knobs had been removed and nails had been driven into the doors to fasten them. But the nails could be drawn and the knobs replaced with very slight effort; and we think that a fair construction of the statute requires us to hold that these doors "are entrances still."

We conclude, therefore, that the certificate herein was obtained upon material statements in the application that were false, and that the respondents are not entitled to hold said certificate. Let an order be entered revoking and cancelling said certificate.

Upon the subject of an allowance of costs and disbursements to the petitioner, we desire to say that the disbursements seem to be unnecessarily large. There is, of course, no doubt that these disbursements have been actually incurred. But the item of stenographer's fees, for instance, is one which should not be allowed in such a proceeding except upon the stipulation of the parties. To allow disbursements in an amount equal to the costs of an ordinary action would make the proceedings unduly oppressive. For these reasons the allowance of costs and disbursements to petitioner is limited to fifty dollars.