## COMMONWEALTH *vs.* CLARENCE C. LYNES.

Hampshire.   Sept. 21. — Oct. 23, 1886.   DEVENS & W. ALLEN, JJ., absent.

In a criminal case, when the witnesses for the government were about to be sworn, the defendant objected to the oath being administered to one of them, a girl thirteen years old, on the ground that she was ignorant of the nature and obligation of an oath. The girl said that she understood that the oath was to tell the truth, and that she would be punished if she did not tell the truth after taking it, but that she did not know how or by whom she would be punished. The judge said he would postpone the decision of her competency, and she could be instructed, if necessary. The next day she was offered as a witness, and was found competent and permitted to testify, against the exception of the defendant. It appeared that, after the adjournment of the court the first day, she was instructed by a Christian minister, who told her that God would punish her, if, after taking the oath, she testified what was not true; and that she did not know this before. *Held*, that a bill of exceptions, taken by the defendant, and setting forth these facts, showed no ground of exception.

In a criminal case, the testimony of a witness was admitted, without objection, as corroborating the testimony of an accomplice of the defendant. The defendant requested the judge presiding at the trial to instruct the jury that the testimony of the accomplice should be corroborated in some material fact. The judge gave this instruction. The defendant further asked the judge to rule that the

evidence of the other witness afforded no such corroboration, but, on the contrary, was contradictory and conflicting, and, if the jury found it to be so, it was their duty to acquit. The judge refused so to rule. *Held*, that the defendant had no ground of exception.

At the trial of an indictment for incest, the judge instructed the jury that carnal knowledge and penetration were necessary to be proved to convict the defendant. *Held*, that the defendant was not entitled to have the jury further instructed, that, if they could not find, on the testimony of the girl with whom the offence was alleged to have been committed, that the defendant had actual sexual intercourse with her, by penetration, they should acquit.

At the trial of a man for incest, it appeared that the girl with whom the offence was alleged to have been committed was thirteen years old. Medical experts, who examined the girl six weeks after the time of the alleged offence, were permitted to testify to the abnormal condition of the girl's private parts at the time they examined her, and to the causes which would produce such condition. *Held*, that the defendant showed no ground of exception.

INDICTMENT for incest. At the trial in the Superior Court, before *Knowlton*, J., the jury returned a verdict of guilty; and the defendant alleged exceptions, which appear in the opinion.

*C. G. Delano*, for the defendant.

*E. J. Sherman*, Attorney-General, for the Commonwealth.

GARDNER, J. 1. The defendant's daughter, with whom the offence was alleged in the indictment to have been committed, was thirteen years old at the time of the trial of the case; and, when the government called its witnesses to be sworn, the defendant objected to the administration of the oath to her, on the ground that she was ignorant of the nature and obligation of an oath. The presiding judge asked her some questions, to which she replied that she understood that the oath was to tell the truth, and that she would be punished if she did not tell the truth after taking it, but that she did not know how or by whom she would be punished. The judge then asked the district attorney if he desired to call her at that time, to which he replied, " No." The judge then said he would postpone the decision of her competency, and she could be instructed, if necessary. The next day she was offered again as a witness, and, upon examination, was found competent, and was permitted to testify, against the objection and exception of the defendant, on the ground that it appeared, as it did in her examination, that she had been instructed by a Christian minister since the last adjournment of the court. On cross-examination, she testified that the minister told her that God would punish her, if, after

taking the oath, she testified what was not true, and that she did not know that before.

The defendant contended, at the argument, that the knowledge of the nature and obligation of an oath must exist independently of the exigencies of the trial, and that it cannot be supplied for that purpose by special instruction. The practice has not been uniform upon this question. In *Rex* v. *Williams*, 7 C. & P. 320, the defendant was indicted for the murder of her husband, and her daughter, eight years old, was called as a witness. It appeared that before the death of her father, which took place about sixteen weeks before the trial, the child had never heard of God, or of a future state of rewards and punishments; and that she never prayed, nor knew the nature of an oath; but that since the death of her father she had been visited twice by a clergyman, who had given her some instruction as to the nature and obligation of an oath. She said she should go to hell if she told a lie, and that hell was under the kitchen grate; but she had still no intelligence as to religion or a future state. Mr. Justice Pàtteson refused to allow the girl to testify, and stated his reasons therefor, as follows: " I must be satisfied that this child feels the binding obligation of an oath from the general course of her religious education. The effect of the oath upon the conscience of the child should arise from religious feelings of a permanent nature, and not merely from instructions, confined to the nature of an oath, recently communicated to her for the purposes of this trial; and as it appears that, previous to the happening of the circumstances to which this witness comes to speak, she had had no religious education whatever, and had never heard of a future state, and now has no real understanding on the subject, I think that I must reject her testimony." In the course of the trial, the counsel for the King stated that it was every day's practice to put off a trial in order that a witness might be instructed as to the nature of an oath, citing *Rex* v. *Wade*, Ry. & M. 86. The oath, however, was refused the witness. The reasons first given by the learned justice have been criticised, and have not generally been followed.

In *Regina* v. *Nicholas*, 2 C. & K. 246, Pollock, C. B., refused to put off the trial in order that a child of six years of age might receive instruction, but said: " There may be cases where

the intellect of the child is much more ripened, as in the cases of children of nine, ten, or twelve years old; for example, where their education has been so utterly neglected that they are wholly ignorant on religious subjects. In those cases a postponement of the trial may be very proper; but where the infirmity arises from no neglect, but from the child being too young to be taught, I doubt whether the loss in point of memory would not more than countervail the gain in point of religious education. I lay down no general rule, as there may be cases where a postponement would be proper."

In the English practice, it is usual for the judge to examine an infant as to his competency before going before the grand jury, or before proceeding to trial, and, if found incompetent for want of proper instruction, in his discretion, to put off the trial in order that the infant may, in the mean time, receive such instruction as may qualify him to take an oath. Roscoe Crim. Ev. (7th Am. ed.) 114. 3 Russ. on Crimes (9th Am. ed.) 612. 1 Stark. Ev. (4th ed.) 117. *Rex* v. *White*, 1 Leach, 430. *Regina* v. *Milton*, Ir. Cir. Rep. 16. *Regina* v. *Baylis*, 4 Cox C. C. 23. The same practice is laid down in 1 Greenl. Ev. (14th ed.) § 367. It is left discretionary with the court, when a principal witness offered is not yet sufficiently instructed in the nature of an oath, to put off the trial that this may be done.

The defendant in his bill of exceptions has given us no information as to the moral condition of the witness, before she was called to testify; nor whether she had been instructed in religious knowledge to any extent. We are not informed what her intellect was, nor how far it was ripened. All these considerations were before the judge, who examined the witness before and after her instruction. If it had appeared to the presiding judge that the witness did not sufficiently understand the nature and obligation of an oath, we think that it was within his discretion to permit the child to be properly instructed, provided she was of sufficient age and intellect to receive instruction.

But the real question arose at the time when she was called upon to take the oath. The judge must then have been satisfied that the witness at that time understood the nature of an oath, and the solemn responsibility which then rested upon her to speak the truth. He was to say whether she understood the

sanctity of an oath, so that she could be a witness, and the jury were to determine whether they believed her evidence. *Regina* v. *Hill*, 5 Cox C. C. 259. *Kendall* v. *May*, 10 Allen, 59, 64. The question of competency, depending upon the fact in evidence, was to be decided by the court. When, therefore, the judge had examined the witness and found her competent to be sworn, and she was permitted to testify, we think that the defendant could not object upon the ground that she had been instructed by a Christian minister since the last adjournment of the court.

2. The defendant requested the judge to instruct the jury, that the daughter, being *particeps criminis*, or partaker in the act, any statement made by her tending to prove the guilt of the defendant should be corroborated in some material fact; that the evidence of Minnie Lynes (a niece of the defendant and a witness for the government) afforded no such corroboration, but on the contrary was contradictory and conflicting; and if the jury found it to be so, it was their duty to acquit the defendant. The judge instructed the jury as requested, down to and including the word "fact"; and declined to give the remainder of the ruling asked for. That which was refused called upon the presiding judge to express his opinion as to the testimony of the witness, and to characterize it to the jury as " contradictory and conflicting." This would be instructing the jury with respect to matters of fact, which is prohibited by the Pub. Sts. c. 153, § 5. The testimony of the witness Minnie Lynes had been admitted without exception, and was before the jury. The prayer for instruction, in the entire form in which it was presented, the court was not required to give.

3. The defendant also asked the judge to instruct the jury, that, if they could not find, on the testimony of the daughter, that the defendant had actual sexual intercourse with her, by penetration, on the occasion on which the government had elected to rely, they should acquit the defendant.

This request was properly refused. The court had already, at the defendant's request, fully instructed the jury that carnal knowledge and penetration were necessary to be proved to convict the defendant; and that an unsuccessful attempt to accomplish this end did not constitute the offence charged. The jury were not confined to the testimony of the daughter upon this

question, but had the right to consider all the evidence in the case.

4. No question was made as to the competency of the medical experts. The subject matter of their testimony related to the normal and abnormal condition of the private parts of the child with whom the offence was alleged to have been committed, and to the causes which would produce such abnormal condition. This testimony from experts accustomed to observe such conditions would aid the jury. *Commonwealth* v. *Piper*, 120 Mass. 185. It must be taken for granted that it appeared that the status of the child when examined by the physicians, on June 23, 1886, was substantially the same as it was soon after May 12, 1886, when the offence was alleged to have been committed. The bill of exceptions does not report all the testimony.

*Exceptions overruled.*