COMMONWEALTH *vs.* HARRY MARSHALL & another.

Plymouth.   January 15, 1912. — February 27, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DECOURCY, JJ.

*Practice, Criminal,* Brief before full court. *Rules of Court. Supreme Judicial Court. Homicide. Evidence. Witness.*

The "concise statement of the case," with which Rule 2 of the rules for the regulation of practice before the full court requires that each brief filed shall begin, is a concise statement of the case shown by the printed record, and therefore it is improper for a brief for the Commonwealth, filed for the argument of exceptions of a defendant taken at the trial of an indictment for murder, to have included in it a statement of the view of the district attorney as to the case developed at the trial rather than a statement of the case presented by the bill of exceptions. In the present case a motion of the defendant to strike such a brief from the files and record was denied, but the court stated that in passing upon the case the statement contained in the brief was wholly disregarded.

At the trial of an indictment for murder there were issues of the identification of a body of a man as that of the deceased and of a patchwork quilt found wrapped around it as one formerly in the home of the deceased. A witness for the Commonwealth testified that he saw the body shortly after it was found and that the quilt "was the quilt, or just like the quilt" which he had seen the deceased take to his home from the home of the witness. In cross-examination, in answer to questions seeking to show that the witness was testifying under the influence of a police officer in charge of the case for the Commonwealth, the witness stated that, when questioned by the officer about two weeks after the finding of the body, he merely had shaken his head. Subject to exceptions of the defendant he was allowed to testify in redirect examination, and his father and mother were allowed to corroborate him, that shortly after seeing

the body with the quilt he had stated to his father that the quilt was like that taken from his home "and they may bring you up for the murder." *Held,* that there was no error in the admission of the evidence of the previous statements to corroborate the witness, following *Commonwealth* v. *Tucker,* 189 Mass. 457, 479 *et seq.*

At the trial of an indictment against a man and a woman for the murder of the woman's husband, the Commonwealth offered as a witness a daughter of the murdered man and of the woman defendant, who was between nine and ten years of age and did not understand the English language. Examined by the presiding judge through an interpreter she stated that she knew what it was to take an oath and that she had been to church. In answer to the question, "Did you learn about God ? " she shook her head in the negative. In answer to the question, "If you don't tell the truth, what do you think will be done to you ? " she answered, "God will punish us and send us to hell." The presiding judge allowed the witness to testify. *Held,* that there was no error shown in the action of the presiding judge.

INDICTMENT, found and returned on October 3, 1910, charging the defendants jointly with the murder of Francisco, otherwise known as Frank, Cusumano at Hull on September 18, 1910.

In the Superior Court the case was tried before *Schofield,* J.

The bill of exceptions stated that at the trial the Commonwealth "introduced evidence tending to show, that Frank Cusumano was killed in his own house, with an axe, by the defendant Harry Marshall, on the eighteenth day of September, 1910, and that the defendant Lena Cusumano, by previous understanding and procurement, was present and assisted in the commission of the act. All of which was contradicted by and in behalf of the defendants."

It appeared that a badly mutilated body of a man which witnesses for the Commonwealth testified was that of Frank Cusumano was found on October 14, 1910, at Sunset Point in Hull about three fourths of a mile from the Cusumano home. There was no clothing upon the body except a patchwork quilt, which was fastened around it underneath the arms with telephone wire. The quilt was made of small patchwork pieces of different colors and lined with blue cloth. The Commonwealth introduced evidence tending to show that the quilt was one which formerly had been lying in the back yard of one Martin C. Jacobson, and which Frank Cusumano had taken away from there on a team driven by Walter Jacobson, a son of Martin, and that it had been on a bed in the Cusumano home before the murder. The defendants denied that the body found was that of Frank Cusumano and also that the

quilt had ever been in the possession of Frank Cusumano or of the defendant Lena.

Walter Jacobson, between fifteen and sixteen years of age, testified that he was present at Sunset Point after the body was found and that he noticed the quilt; that "it was the quilt, or just like the quilt," which Frank Cusumano had taken from his father's back yard to his own home. In cross-examination in reply to inquiries made by the defendants, "in an effort to show with other things that the witness was then testifying under the influence of" the police officer who was in charge of the case and was present in the court room, the witness stated that the officer had talked with him about the quilt and had shown it to him about two weeks after the body was found and had asked him about it, and that all he did was to shake his head. He also testified in cross-examination that it did not occur to him until he was walking home from having seen the body that the quilt was the same that he had seen Frank Cusumano take from his father's back yard. On redirect examination, subject to exceptions by the defendants, he was allowed to testify "that after seeing the body and quilt on the beach, and before Reynolds [the police officer] talked with him, he went home to dinner and said to his father, in his step-mother's presence, 'The quilt that was lying near the body was like the quilt which lay on the ties, and they may bring you up for the murder.'" Martin C. Jacobson then was recalled and was allowed to testify, against the defendants' objection, that upon the day of the finding of the body after he and Walter came home and sat down to dinner, Walter said, "Why, pa, that quilt came from our place, and if they find it out they will say you killed Frank;" and the step-mother, Elizabeth Jacobson, against the defendants' objection was allowed to testify to the same conversation, which she gave in the following language: "Walter said, 'Pa, that is the quilt that was in our yard. If it is Frank they might say you killed him.'"

It appeared that Frank and Lena Cusumano had three children, the oldest of whom was between nine and ten years of age, Accusia Cusumano. She was called to testify by the Commonwealth. Before she was sworn, the defendants' counsel stated, "I think she should be examined as to whether or not she knows the nature of an oath." Questioned by the presiding judge in English out of the

hearing of the jury, the witness stated that she could not talk English, and showed that she understood but little. The following examination through an interpreter then occurred: "Q. [Through interpreter.] When were you nine years old? A. Last month. — Q. What day of the month? A. No. — Q. How many brothers and sisters have you? A. Two sisters. — Q. How old are they? A. I don't know. — Q. Do you know what it is to take an oath? [The interpreter raised his hand when this question was asked.] A. [Witness nodded.]   Q. Have you ever been to church? A. When I was in Boston, yes. — Q. How long did you go to church? A. All the Sundays. — Q. Did you learn about God? A. [Witness shook her head in the negative.] — Q. If you don't tell the truth, what do you think will be done to you? A. God will punish us and send us to hell." The witness then was sworn and gave testimony material to the case of the Commonwealth.

The jury found both defendants guilty of murder in the first degree; and the defendants alleged exceptions.

*W. J. Coughlan & T. J. Grady,* for the defendants.

*A. F. Barker,* District Attorney, (*F. G. Katzmann,* Assistant District Attorney, with him,) for the Commonwealth.

SHELDON, J. The defendants' motion, made at the argument in this court, to strike from the files and record the brief of the Commonwealth, cannot be allowed. But the statement of the case contained in that brief was not a proper one. It was the view of the district attorney as to the case developed at the trial rather than a statement of the case presented by the bill of exceptions. That bill of course stated only such part of the proceedings had at the trial as were needed to present properly to us the questions of law which were intended to be brought up. The concise statement of the case with which it is required by Rule 2 for the regulation of practice before the full court that each brief shall begin, means a concise statement of the case shown by the bill of exceptions. Nothing more should be included; and the brief of the Commonwealth should not have gone further. Accordingly in passing upon the case we have wholly disregarded the statement contained in that brief.

The first contention of the defendants is that testimony of the statements of Walter Jacobson made out of court shortly after the alleged crime had been committed should not have been admitted.

This contention cannot be supported. It was claimed by the defendants that the witness was testifying under the influence of a policeman, and that before coming under this influence the witness had not observed the fact, the identity of a quilt, to which he testified. To meet this claim of the defendants, the judge might allow it to be shown that immediately after seeing the quilt and before meeting the policeman the witness had made the same statements to which he now testified. The subject was fully discussed by Hammond, J., in *Commonwealth* v. *Tucker*, 189 Mass. 457, 479, *et seq.*, and we need add nothing to what was there said.

There was no exception to the judge's preliminary examination of the witness Accusia Cusumano outside of the hearing of the jury. The examination was made at the request of the defendants' counsel, and there is nothing to show that it was not made in the manner that they desired, or that the defendants were in any way prejudiced by the method adopted.

We find no error in the action of the judge in allowing this witness to testify. It was for him to decide upon her competency; his decision will not be overruled unless some error is shown; and that is not the case here. *Commonwealth* v. *Mullins,* 2 Allen, 295. *Commonwealth* v. *Lynes,* 142 Mass. 577. *Commonwealth* v. *Robinson,* 165 Mass. 426. *Commonwealth* v. *Reagan,* 175 Mass. 335. *Commonwealth* v. *Ramage,* 177 Mass. 349.

The other exceptions taken by the defendants were expressly waived. As this is a capital case, we have examined them, and are satisfied that none of them could have been sustained.

*Exceptions overruled.*