COMMONWEALTH *vs.* JOHN DIES.

SAME *vs.* JOSEPH ANDREWS.

SAME *vs.* BENJAMIN GOMES.

Barnstable.    March 26, 1924. — April 8, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Rape. Delinquent Child. Practice, Criminal,* Opening statement by district attorney, Exceptions, Discretionary power of judge in conduct of trial, New trial. *Evidence,* Competency, Relevancy and materiality, Of state of mind. *Jury and Jurors.*

Under G. L. c. 119, § 52, a boy under seventeen years of age may be indicted, tried, convicted and sentenced for the crime of rape, since by G. L. c. 265, § 22, that crime is punishable " by imprisonment in the State Prison for life or for any term of years."

An exception by a defendant, at the trial of an indictment, to a hasty remark made by the district attorney in a colloquy which arose in the midst of his opening statement to the jury, must be overruled where, upon its being called to his attention, he immediately disclaimed the remark and the trial judge forceably and peremptorily ordered the jury

to disregard it, since the defendants could not have suffered harm therefrom.

After the complaining witness, at the trial together of three indictments against three defendants for rape of a young girl, several times had fainted during her testimony and had had to retire from the witness stand owing to her physical and mental condition, the defendants moved that the case be taken from the jury and a mistrial ordered. The trial judge, after a statement of the facts, asked of the district attorney whether he objected to the granting of the motion. The district attorney replied that he did object. The motion then was denied. The defendants excepted to such denial, and in this court contended that the judge shirked the exercise of a sound judicial discretion and put the question " up to the district attorney to say whether he should declare a mistrial or not." *Held,* that the record disclosed nothing that gave any countenance to the argument that the judge failed in any respect to exercise his individual judicial discretion in denying the motion to declare a mistrial.

In examining the complaining witness at the trial above described, the district attorney asked her, " How did he assault you . . . ? After he was on top of you, how did he assault you; what part of his person, if any part of his person, came in contact with your person? " *Held,* that the questions, although leading, properly were allowed to be asked in the discretion of the trial judge.

A remark by the trial judge to an exception by the counsel for the defendant, " Yes, but it would be impossible for the district attorney to put it more fairly, I think, than that," could not have harmed the defendants.

At the trial of the indictments above described, the state of mind of the complaining witness when the alleged assaults were made upon her was relevant in the proof of a material and all important fact, and therefore it was proper to ask her, " Did either of these men have relations with you by your consent? " and, " Were you willing or unwilling for these men to do what they did? "

At the trial of an indictment for rape, the order of proof, particularly the time of proof, of preliminary facts rested in the discretion of the presiding judge.

At the trial of the indictments above described, it was proper for the judge to exclude questions asked of the complaining witness seeking merely to establish her acquaintance with men other than the defendants.

The evidence at the trial of the indictments above described was largely circumstantial and exceptions were overruled to testimony of a witness which tended to show that one of the defendants, whom the witness could not identify but whose identity was established through testimony of other witnesses, had applied to her in the middle of the night for gasoline with which to run an automobile; and it also was proper to overrule exceptions to testimony by other witnesses identifying as in the vicinity of the alleged assault an automobile in which, the evidence tended to show, the defendants had kidnapped their victim; and to testimony tending to show that gasoline had been taken from the tank of an automobile left in a yard of an inn near the house of the witness to whom a request for gasoline had been made.

The defendants excepted to a refusal by the trial judge to strike out part of the testimony of a witness who, in describing the automobile alleged to have been used by the defendants, stated, " I had the impression there was a Klaxon horn." *Held,* that the exceptions must be overruled as the statement of an " impression " was a statement of a slight remembrance.

At the trial above described, it was proper to admit testimony of an attending physician that he advised the complaining witness to go out on the street, meet people and exercise, the evidence being admissible to explain what might be argued to be singular conduct on the part of the complaining witness, shown by evidence that she went out to visit neighbors on the day of the alleged assault and also on the next day, and that she went to a dance a week later.

It is proper at a trial where a jury has taken a view to admit other evidence tending to show the same things which the jury saw upon the view.

At the trial above described, it was proper to exclude testimony of a stenographer as to the number of times the complaining witness in her testimony had answered, " I don't know."

At the trial of the indictments above described, one of the defendants on cross-examination was asked, subject to his exception, " Didn't you have something to do with . . . [a certain lawyer] before you were arrested . . . about this case? " and he answered, " Not before I was arrested." *Held,* that the exception must be overruled as the defendant could not have been harmed.

At the hearing of a motion for a new trial of an indictment, after a verdict of guilty, it appeared that on a Sunday during the trial one of the jurors was drunk by reason of the voluntary use of intoxicating liquors, that he was arrested the next morning, was brought into a district court, and there was released without arraignment and, so far as appeared, without " a written statement and request for release," such as is provided for in G. L. c. 272, §§ 45, 46. There was no evidence of the degree of his drunkenness on Sunday, nor that he was addicted to the use of intoxicants or of drugs, nor that he was under the influence of intoxicating liquors or drugs at any time when he was sitting as a member of the jury. The judge denied the motion and the defendant excepted. *Held,* that the exception must be overruled since it could not be said with truth that the juror was disqualified for a proper deliberation and exercise of his reason and judgment, however much such conduct was justly open to severe criticism and stinging reproof.

THREE INDICTMENTS, found and returned on October 11, 1921, charging the defendants respectively with rape.

In the Superior Court, the indictments were tried before *Lummus,* J., the trial beginning on November 28, 1921, and lasting two weeks. Material motions, evidence, and exceptions by the defendants are described in the opinion. The defendants were found guilty and alleged exceptions.

*W. H. Lewis,* (*I. H. Fox* with him,) for the defendant Dies.

*J. L. Sheehan,* for the defendant Andrews.

*E. B. Jourdain,* for the defendant Gomes, submitted a brief.

*S. P. Hall,* District Attorney, for the Commonwealth.

PIERCE, J.   The three defendants were tried together on separate indictments, each of which charged that the defendant " did assault Gertrude Butler, with the intent to commit rape upon her; and her, the Gertrude Butler, did commit rape upon " in the county of Barnstable on August 16, 1921.

The defendant Andrews seasonably filed the following plea: " And now comes Joseph Andrews and says that the time of the commission of the alleged offences, he was under the age of seventeen years, a juvenile, and the court has no jurisdiction of the person of the defendant nor has it any jurisdiction of the subject matter contained in the said indictment in so far as it relates to him, the said Joseph Andrews." " It was admitted and agreed at the hearing [on the plea] that the said Joseph Andrews was sixteen years of age on the date of the alleged offence but was seventeen years of age at the time of making this plea and motion." The judge after a hearing overruled the plea and the defendant duly excepted.

The ruling was indisputably right.   The statutes upon which the defendant relies, 1906, c. 413, § 1, 1917, c. 326, § 2, now G. L. c. 119, § 52, for the purposes of the act relating to delinquent children defines a " Delinquent child " to be " a child between seven and seventeen who violates any city ordinance or town by-law or commits an offence not punishable by death or by imprisonment for life."   The crime of rape is punishable " by imprisonment in the State Prison for life or for any term of years."   R. L. c. 207, § 22. G. L. c. 265, § 22.   As a consequence it follows that it is wholly immaterial that Joseph Andrews was sixteen years of age when the alleged offence was committed.

At the trial, lasting two weeks, all three defendants testified as well as witnesses in their behalf.   And each defendant denied the commission of the alleged crime.   There were no exceptions to the charge of the judge; no requests for in-

structions, which were refused; and no requests for a directed verdict of not guilty. The defendants were each found guilty and each sentenced to the State Prison. "For convenience and with the consent of all parties, all matters excepted to by all the defendants are placed in this bill of exceptions." The jury were given a view of the place and locality where the offence is alleged to have been committed.

The district attorney, in his opening statement of the facts which he expected the evidence would establish, among other things, said to the jury, "On the fifteenth day of August, the same night that Miss Butler and Eldridge left her home, a Mr. Corbett of Sagamore attended the pictures at the Colonial Theatre, or the entertainment, whether it was pictures or not I do not know. He drove up there in a Ford car, and he left the Ford car at the side of the Colonial Theatre on what is known as Wareham Avenue. You will recall yesterday after we had gone down to Onset and we turned that we went around the corner of the Colonial Theatre and out back on to the State road across the railroad track. He left his automobile shortly after nine o'clock near the rear or side entrance to that Colonial Theatre. That automobile was a Ford automobile; that automobile was found a few days later in what we call, or yesterday spoke of — I think was spoken of on the view — as the old Sandwich road, and that old Sandwich road is opposite, across where the lights were pointed out to you, from the village we first stopped at known as Jungletown, where each of these three defendants lived." At this juncture counsel for the defendants, speaking through Mr. Lewis, interrupted the district attorney and addressed the judge as follows: "If your Honor will pardon me, if the district attorney does not intend to connect these defendants with this particular Ford car belonging to Mr. Corbett, I desire to save my rights to his opening up on evidence which he may not connect up on." And speaking through Mr. Sheehan said: "That is the whole original objection and I wish to save an exception," thereby referring to an objection before taken to a statement of the district attorney in reference to a motor machine which he alleged " was despoiled

and robbed of gasoline and tools and so forth." To these criticisms the trial judge said, " I assume that the district attorney does intend to connect it." The district attorney then said, " I hope by an abundance of evidence which you well know." The defendants, to this statement of the district attorney, at once excepted. The district attorney then said, " I will withdraw that ' well know.' " The defendants still excepting the judge said, " I don't think it was proper for the district attorney to make any assertion as to what counsel for the defendants knew or did not know, and I instruct the jury to disregard it. As to the matter in chief, of course, if the district attorney can connect it, as he says he can, he is entitled to open . . . ." To this instruction to the jury the defendant through Mr. Sheehan replied, " As the moral harm is done . . . and we are prejudiced, I want to hold my exception." In the circumstances above recited it is not at all clear that the words " which you well know " were improper in the sense they called for a rebuke from the trial judge, or required that the jury should be instructed to disregard them. However that may be, it is plain the defendants could suffer no harm from the hasty remark, after the disclaimer of the district attorney and the forceable, peremptory order of the judge to the jury.

Gertrude Butler, the woman alleged to have been raped by the defendants, was a witness for the Commonwealth, and while testifying, collapsed, fainted or had a " spell " twenty-one times: eight of these on her direct examination. At such times the witness was unable to continue and was removed from the court room. Several times the defendants moved that the case be taken from the jury and a mistrial ordered by reason of her physical and mental condition and because they were prejudiced. On one occasion the judge said in reference to these incidents: " The witness has either fainted or been taken with some form of nervous disturbance a number of times while testifying, she having begun to testify about 10:45 and it now being 2:20 and has just now suffered the same thing, and on one occasion after the happening of such an occurrence she made some moaning or outcry in the corridor adjoining the court room. In view

of these occurrences, counsel for the several defendants ask the court to declare a mistrial.  Do you object to it? " The district attorney replied, " I object to it."  The judge then said " The court denies the motion, and the defendants severally except to such denial."  It is the contention of the defendants that the fainting spells were or might be found by the judge to be such a disturbing influence upon the minds of the jurors as was calculated to affect their verdict through sympathy for the witness or prejudice against the defendants; and that the judge shirked the exercise of a sound judicial discretion and put the question " up to the district attorney to say whether he should declare a mistrial or not."  The action of the judge in asking the district attorney if he objected to the motion or request for a declaration of mistrial manifestly does not even tend to establish the charge, that the judge did not exercise his discretion or do else than speak the will of the district attorney.  It is evident there is nothing in the fact that the witness often fainted under examination, or in the reported action of the judge in reference thereto, which gives any countenance to the argument that the judge failed in any respect to exercise his individual judicial discretion in refusing the motion to declare a mistrial.  Indeed, if the defendants' contention were correct, these defendants might go untried for the offence of which they were found guilty, since Gertrude Butler might never be able to go through an examination and cross-examination without fainting.  The exception of the several defendants in this regard is overruled.

The next exceptions argued are to the questions of the district attorney to the witness Butler, " How did he assault you, Miss Butler?  After he was on top of you, how did he assault you; what part of his person, if any part of his person, came in contact with your person? "  These questions, though leading, were properly allowed to be asked in the discretion of the judge.  *Commonwealth* v. *Cline*, 213 Mass. 225, 227.  *Commonwealth* v. *Turner*, 224 Mass. 229, 237, 238.  The remark of the judge to an exception by the defendants' counsel, " Yes, but it would be impossible for the district attorney to put it more fairly, I think,

than that," could not have harmed the defendants. These exceptions are overruled.

The exceptions saved to the question, " Did either of these men have relations with you by your consent? " and to the question " Were you willing or unwilling for these men to do what they did? " must be overruled. The state of mind of the witness when the alleged assaults were made upon her was relevant in the proof of a material and all important fact. *Commonwealth* v. *Woodward*, 102 Mass. 155, 161. *Brown* v. *State*, 127 Wis. 193. *Jones* v. *State*, 104 Ala. 30.

The exceptions saved to the questions, " Did you receive a visit from a physician? " " When? " " Who was the physician? " " Was he the family physician? " and to the answers thereto, must be overruled. The questions were relevant to an issue of fact which developed later but which had not then appeared. The order of proof, particularly the time of proof, of preliminary facts rested in the discretion of the presiding judge.

The exception saved to the refusal of the judge to admit and require an answer to the question of the defendants, " Did you know any of the captains on the tugs in the canal? " must be overruled. If the expected answer was " Yes," the question and answer could have no legitimate bearing or relevancy in proof or disproof of the character and chastity of the witness. *Commonwealth* v. *Harris*, 131 Mass. 336. *Commonwealth* v. *Kaplan*, 238 Mass. 250, 255.

The next exceptions relate to the testimony of Lillian W. Kimball. She testified that she lived next door to the Lakecroft Inn; that she kept a store; that she had a five-gallon can on the platform of the store; that she had gasoline for sale; that on the night of August 15, at one o'clock, the door bell rang; that she unlocked the door and a man, whom she did not identify at the trial and of whom she could not give any description, asked if he could have some gasoline; that she said " No," and he went away. In substance, she further testified that, some time after she had fallen asleep, the door bell was rung again and a person who seemed to be the same man asked " if he could have some gasoline," and that she

said " No; " that she went to bed and again the doorbell rang; that at the door a person who looked like the same man said " Won't you please let me have some gasoline? " and she said " No, that he couldn't have any gasoline; " that she looked across to the Lakecroft Inn and saw that it was lighted. The district attorney then asked her, " What did you say to the man? " To this question the defendants objected and asked that their exceptions be saved. The judge decided to admit this question " *de bene,* upon the assurance that there will be something to connect this visit and this at present unidentified man with one of these defendants. If there is no such evidence forthcoming to connect it, of course, I will then strike it out. . . . " Thereupon the question was again asked and the witness testified, " Well, as I said, I told him that he couldn't have any gas, and I noticed the light over at the Lakecroft, and I said, ' Why don't you try over at the Lakecroft? ' I said, ' Certainly, there is a man there to wait on you, and I shall not wait on you.' Then I said, ' Go away from my house: you have been here three times tonight.' That is, I supposed it was the same man." The defendants then moved to strike out all the testimony of the witness as not connected with any of the defendants. The motion was denied and exceptions were saved by the defendants, each defendant reserving the right to renew the motion.

The defendants also excepted to the testimony of the same witness to the effect that she had a five-gallon can on the platform of the store; that the can was empty and was not on the piazza the next morning. The exception to the admission of the testimony and to the refusal to strike it out was properly overruled. The circumstantial evidence in the case warranted the jury in finding that the person who asked for the gasoline was one of the defendants, John Dies. If the jury so found, the evidence of what he said and did at the time and place was incontrovertibly admissible against him, and against the other defendants if he was found to be acting in furtherance of their common purpose. Dies's connection with the endeavor of some person to get gasoline from the witness could properly

be found from the testimony of John J. Kelleher, the proprietor of Lakecroft Inn, that he saw Dies on the morning of August 16; that he came to Lakecroft Inn a little before 1 A.M. on August 16, asking for gasoline, with a five-gallon can in his hand; that Kelleher said he hadn't any gasoline; that he told the man to go to Mrs. Kimball's, next door, and tell her the story; that Dies said he had been there and didn't want to go there again as she was saucy; and that he noticed another man about twenty-five feet away from Dies during the talk. Furthermore, Miss Butler testified that Dies and Andrews went off in the middle of the night in question, when they stopped in the vicinity of Kelleher's Lakecroft Inn to get gasoline, and that they came back with it. It is manifest the evidence warranted the jury in connecting the conversation and can with the defendants.

The exception saved to the question to Kelleher, " Was there an automobile in your yard on the night that Dies was there? " and to the answer " There was plenty " must be overruled, because no possible harm could result to the defendants from the question, which manifestly was a preliminary or introductory one not followed by other questions. *Barnard* v. *Bates,* 201 Mass. 234.

The testimony of Corbett and Ross, describing the condition of a Ford car, which was alleged to have been stolen from Corbett and to be the car in which Miss Butler was kidnaped and in which the alleged crime of rape was committed, was excepted to on the ground that it was not connected with any of the defendants. The evidence was ample to warrant a finding of the jury that Dies, Gomes and Andrews got into a Ford automobile which belonged to Corbett and drove it away. The exception must be overruled. The motion to strike out the testimony was denied rightly and the exceptions taken to the refusal of the motion must be overruled.

The exceptions saved to the testimony of Alma M. Ross, Myra H. Keene and Thelma W. Keene must be overruled. These witnesses saw an automobile which could have been found to be the Ford automobile stolen from Corbett, a

little after 11:13 P.M. on the night in question near the place where Miss Butler, at about 11:30 P.M., as alleged, was kidnaped. None of these witnesses could identify any of the persons in that Ford automobile as being any of the defendants, but they did identify the automobile later at Barnstable, and again at New Bedford. Evidence from other witnesses tended to establish that the identified car was the stolen automobile of Corbett, and tended to prove that the persons in the automobile were the defendants. The exception saved to the refusal to strike out that part of the testimony of Thelma W. Keene wherein she said " I had the impression there was a Klaxon horn " must be overruled. To say that one has an impression is to say that the remembrance of the fact or event is slight, remaining in the mind as a survival from more distinct knowledge. The declaration is often made as the equivalent to the phrase " I think " and without strict regard to the value of words. 2 Wigmore on Ev. §§ 726, 727, 728 and cases collected. It is plain it was open to the defendants to ascertain by cross-examination the quality of the recollection of the witness, and this should have been done before the judge was called upon to exclude the testimony or strike it out.

The evidence of Dr. Snow that he advised Miss Butler to go out on the street, meet people and exercise was admissible to explain what might be argued to be singular conduct in Miss Butler in the evidence that she went out to visit the neighbors on the day of the alleged assault, also on the next day, and that she went to a dance one week later.

The exception saved to the testimony of James O'Keefe and William Hemmerly must be overruled. That evidence showed that on the night in question a Franklin car was in the yard of the Lakecroft Inn, a little after midnight; that it was left there because of a flat tire, which could not be fixed; that O'Keefe ran the engine of the Franklin, which required gasoline; that he took home the occupants of the Franklin car. The evidence further showed that Hemmerly fixed the tire the next morning and that he then found the gasoline tank practically empty; a plug, which filled it,

on the ground underneath; and gasoline stains underneath. This evidence, in connection with the fact, which the jury might find, that Dies and Andrews were in the vicinity in the middle of the night looking for gasoline, with an empty five-gallon can, and that they got gasoline from some source and came back with it, were circumstances which could properly be presented to the jury. The statement of Hemmerly that " I saw that it (the plug) was gone " was not improperly received in connection with his other testimony.

The exception to the use of a " piece of paper " by the district attorney as a chart, which was not shown to the jury, or admitted in evidence, and to the testimony of Bradford that he had seen marks of the automobile which he had previously seen, must be overruled, as there is nothing in the contention of the defendants that the best evidence of such marks was that gained by the jury when they viewed the premises. There was no error in the questions put to the witness Bourne in reference to the automobile tracks. These questions manifestly were asked for the purpose of making the issue clear to the jury.

The exception to the exclusion of the testimony of the stenographer as to the number of times Gertrude Butler in her testimony answered " I don't remember " and " I don't know " must be overruled. The jury, as the judge said in substance, would not be aided by the evidence offered. It is plain the admission of such evidence or its exclusion must rest in the discretion of the trial judge.

The defendant Dies on cross-examination was asked, " Didn't you have something to do with him [Lawyer Sullivan of Middleboro] before you were arrested . . . about this case? " and he answered, " Not before I was arrested." No further questions were put in this regard. The defendant could not have been harmed. The exception must be overruled.

On a motion for a new trial there was evidence that one of the jurors was drunk by the voluntary use of intoxicating liquors on Sunday, December 4, 1921; that he was arrested on Monday morning, December 5, 1921, and brought into

the Third District Court of Bristol, where he was released without arraignment and, so far as appears, without " a written statement and request for release," as is provided in G. L. c. 272, §§ 45, 46. There was no evidence of the degree of his drunkenness on Sunday; there was no evidence that the juror was addicted to the use of intoxicants or of drugs; and there was not evidence that his faculties were beclouded or that he was under the influence of intoxicating liquors or drugs at any time when he was sitting as a member of the jury.     In these circumstances it cannot be said with truth that the juror was disqualified for a proper deliberation and exercise of his reason and judgment, however much such conduct is justly open to severe criticism and stinging reproof.     The exception to the refusal to grant a new trial because of the alleged drunkenness of the juror must be overruled.

We have carefully considered the many exceptions saved by the different defendants not specifically argued in the briefs or spoken of in this opinion and find no error in them or in the refusals of the judge to strike out testimony.

*Exceptions overruled.*