COMMONWEALTH vs. FILIBERTO JIMENEZ.

Essex. June 10, 1980. — August 26, 1980.

Present: GOODMAN, BROWN, & NOLAN, JJ.

*Witness*, Competency, Psychiatric examination. *Practice, Criminal*, Mistrial. *Evidence*, Non-existence of evidence.

At the trial of a defendant charged with the statutory rape of an emotionally disturbed child, there was sufficient evidence to warrant the judge's finding that the victim was competent to testify. [443]

At the trial of a defendant charged with the statutory rape of an emotionally disturbed child, the judge did not abuse his discretion in refusing to order the victim to submit to a psychiatric examination. [444]

At the trial of a defendant charged with the statutory rape of an emotionally disturbed child, the conduct of the victim who sat mute for several minutes at the commencement of her cross-examination until assistance was rendered by her mother and her teacher did not require a mistrial or provide a basis for striking her testimony. [444] BROWN, J., concurring.

At a statutory rape trial, the judge did not err in refusing to allow the defense counsel to argue the Commonwealth's failure to conduct a hair comparison test where neither the examining physician nor the police officers who testified were asked whether hair samples had been taken from the defendant. [444-445]

INDICTMENT found and returned in the Superior Court Department on November 13, 1978.

The case was tried before *Garrity, J.*

*Patricia A. O'Neill* for the defendant.

*Lila Heideman*, Assistant District Attorney, for the Commonwealth.

NOLAN, J.   The defendant claims to be aggrieved by the judgment of conviction following a jury trial of an indictment charging him with having sexual intercourse with a female under the age of sixteen years in violation of G. L.

c. 265, § 23, as appearing in St. 1974, c. 474, § 3. There was no error.

The jury could have found that on September 9, 1978, the victim, then fifteen years of age and emotionally disturbed, came to the defendant's house, which was located across the street from her home, to play with his daughters. The defendant was living there with his wife, four step-children and one child of their marriage. Three of the children were home with the defendant when the victim arrived at or about 3:30 P.M. The defendant's wife was visiting her mother at a local hospital. For a short spell the victim watched a baseball game on the television with the defendant and his children until the defendant whispered to her to come into the bedroom with him. After they went into the bedroom and the door was closed, the defendant told her to sit on the bed. He took off her undergarments and her trousers before he undressed himself by taking off his pants and underwear. In succession, he kissed her, fondled her breasts and had sexual intercourse with her. He then gave her a tissue with which to clean herself and some money in the form of change. He admonished her to tell nobody about the bedroom scene.

The defendant then cooked and served dinner to his children and to the victim who eventually went home at or about 8:30 P.M. As soon as she reached her home, she described the encounter with the defendant. Her parents called their physician and drove to the Lawrence General Hospital, where a nurse, Linda LeBlond, who spoke to the victim, called the police. A doctor's examination revealed the presence of seminal fluid but no sperm. The victim exhibited no lacerations or bruises around the vagina. Her hymen was not intact. The hospital's examining physician opined that she had experienced sexual intercourse within eighteen hours of his examination.

The defendant argues error on the part of the trial judge (1) in permitting the victim to testify without the defendant having the benefit of a psychiatric examination of her, (2) in denying a motion for mistrial and motion to strike because

of the conduct of the victim on the witness stand and, (3) in sustaining the Commonwealth's objection to that part of defense counsel's final argument to the jury in which he pointed out the fact that the prosecution failed to take sample pubic hairs from the defendant for a comparison test.

1. *Qualification of the victim as a witness.* The victim was a student at an ungraded school for children with learning disabilities and emotional problems. The trial judge conducted an adroit voir dire examination of the victim. He also heard from Cynthia Mott, a teacher at her school. He elicited from the victim her acknowledgment of what a lie is and her obligation to tell the truth. He satisfied himself that she was able to remember events, though the record is replete with her failures to respond to questions. These lacunae are as consistent with her extreme care to tell the truth as they are with her inability to understand the questions. Her testimony on the witness stand as to the activities of the defendant and herself on the critical afternoon and evening was consistent, in the main, with the fresh complaint made by her to her parents and to the physician at the hospital soon after the events.

The teacher's opinion was that she was competent to testify and that a psychiatrist who saw her before the trial considered her competent. No objection was interposed to this evidence. In any event, the record generously supports the trial judge's finding and ruling of competency.

A person of sufficient understanding is competent to testify as a witness. G. L. c. 233, § 20. Sufficient understanding in this context is the "capacity to observe, remember, and give expression to that which she has seen, heard or evidenced." *Commonwealth* v. *Tatisos,* 238 Mass. 322, 325 (1921), quoted with approval in *Commonwealth* v. *Whitehead,* 379 Mass. 640, 656 (1980). Competency of a prospective witness is peculiarly within the trial judge's discretion and "his determination will be rarely faulted on appellate review." *Commonwealth* v. *Whitehead, supra* at 656. *Commonwealth* v. *Marshall,* 211 Mass. 86, 90 (1912), and cases cited. *Commonwealth* v. *Lynes,* 142 Mass. 577, 580-581 (1886).

The trial judge's decision not to order a psychiatric examination of the victim is also discretionary. *Commonwealth v. Fillippini*, 1 Mass. App. Ct. 606, 609 (1973). Even an insane person is not necessarily an incompetent witness. *Commonwealth v. Zelenski*, 287 Mass. 125, 129 (1934). The defendant is fully protected by his inviolate right to cross-examination of the witness. The trier of fact is then left with the duty to evaluate the credibility of the witness. We shall not permit open season on young persons who have learning disabilities or emotional problems and who are sexually abused by declaring them presumptively incompetent witnesses.

2. *Motion for mistrial and motion to strike testimony of the victim.* At the commencement of her cross-examination, the victim became silent and sat mute for seven minutes. Her mother tried to help her by moving to her side. The judge spoke sympathetically to her and tried to quiet her fears. At last, Cynthia Mott, her teacher, sat by her side and held her hand. With the parties in this posture, defense counsel was able to cross-examine her. He orally moved for a mistrial. He did not object to the ministrations of the victim's mother or to the assistance rendered by the teacher. The declaration of a mistrial is discretionary. *Commonwealth v. Dies*, 248 Mass. 482, 488 (1924). There was no need to strike the victim's testimony because it was for the jury to decide whether to accept or reject her testimony. See *Commonwealth v. Sires*, 370 Mass. 541, 546 (1976).

3. *Comment on failure to conduct test of hairs.* Linda LeBlond was the registered nurse on duty at the Lawrence General Hospital on the night of September 9, 1978, when the victim was brought there. LeBlond first saw the victim in the emergency room at 9:15 P.M. She was called as a witness by the prosecution. On cross-examination, LeBlond testified that she took samples of foreign pubic hairs from the victim and placed them in a "Johnson Rape Kit." Her reason was "to see if they could be matched with the pubic hair of a male subject or any other subject." She

testified that she did not know whether samples were taken from the defendant. She did not know whether such a sample would have been helpful in identifying the person whose pubic hair was found on the victim. She believed that such samples were used as a means of eliminating groups of people, but not for the purpose of identifying people. She was not at all certain about the practicability or efficacy of hair comparison tests. No one else testified about such comparison tests.

In his final argument, defense counsel asked rhetorically, "Why didn't they take hair samples and compare them with the one taken . . . ?" The assistant district attorney objected and his objection was sustained. The judge told the jury "to disregard that line of argument." The defendant argues that the judge's action runs afoul of the principles articulated in *Commonwealth v. Bowden,* 379 Mass. 472, 485-486 (1980), in which the court held it to be reversible error for the trial judge to instruct the jury that the failure of the government to conduct scientific tests was not to be considered by them.

It is not clear that samples were not taken from the defendant. The examining physician was not asked about hair samples on the witness stand and the police officers who testified were not asked. In short, the defendant has fallen woefully short of demonstrating the applicability of *Bowden* to these facts.

*Judgment affirmed.*

BROWN, J. (concurring). I add a reluctant concurrence. I think that this case comes close to requiring reversal of the defendant's conviction because his right to cross-examine the victim effectively was impaired. See *State v. Swenson,* 62 Wash. 2d 259, 278-281 (1963). Cf. *Commonwealth v. Funches,* 379 Mass. 283, 291-294 (1979).