COMMONWEALTH *vs.* THOMAS DOUCETTE.

Essex. May 12, 1986. — August 20, 1986.

Present: DREBEN, KASS, & WARNER, JJ.

*Constitutional Law,* Confrontation of witnesses. *Witness,* Competency, Psychiatric examination. *Practice, Criminal,* Voir dire, Judicial discretion.

At the voir dire inquiry into the testimonial competence of two prosecution witnesses during which defense counsel did not suggest particular questions or subjects about which she wanted the judge to interrogate, the judge did not abuse his discretion in refusing to allow defense counsel to ask questions of the two witnesses inasmuch as, in the case of one witness, the judge chose to conduct the voir dire examination entirely on his own and, in the case of the second witness, an examination by the prosecutor which the judge intended to limit to introductory and mechanical questions did not proceed beyond that stage. [663-665]

No abuse of discretion appeared in a criminal case in the judge's denial of the defendant's request, under G. L. c. 123, § 19, for psychiatric evaluations of two prosecution witnesses. [665]

INDICTMENT found and returned in the Superior Court Department on August 1, 1984.

The case was tried before *Robert A. Barton,* J.

*Michael R. Schneider,* Committee for Public Counsel Services, for the defendant.

*Richard A. McGovern,* Assistant District Attorney, for the Commonwealth.

KASS, J. Two important prosecution witnesses had histories of mental illness which made it advisable to conduct voir dire inquiries into the testimonial competence of each. Over objection, the judge refused to allow Doucette's counsel to put questions to the proposed witnesses. That refusal, the defendant argues on appeal, was an abuse of discretion which deprived the defendant of the rights of confrontation and due process.

The crime of which the defendant was convicted was attempted extortion. On the basis of the evidence most favorable to the Commonwealth, the jury could have found that in May, 1984, the victim, Tonto Archie Van Dyke, lived in a rooming house in Beverly. Then 32 years old, Van Dyke had a history of mental illness which included a diagnosis of paranoid schizophrenia. Through resolution of a dispute about entitlement, Van Dyke had received a settlement of $3,900 from the Social Security Administration. The scheme of extortion was that the defendant Doucette, and a codefendant, Cassista, told Van Dyke that there was a contract on his head. Van Dyke understood this to mean, "It's where somebody would pay money to a certain party to beat you up or annihilate you." Demands for money to keep Van Dyke from harm escalated. In relatively short order, the Social Security money was exhausted, although the pressure from the defendants was not. In these anxious circumstances, Van Dyke unburdened himself to his therapist at the Department of Mental Health. Police intervention followed.

Cassista conceded having received money from Van Dyke for "marijuana" and "speed," but denied the extortionate threats. Those, the defense suggested, were the product of Van Dyke's fevered, paranoid mind. Doucette did not take the stand.[1] Van Dyke's story, that Doucette had threatened him with harm which cash could ward off, was corroborated (with variations in detail) by a friend of Van Dyke's, Thomas Prata. Van Dyke and Prata had met as fellow patients at Danvers State Hospital and had maintained their friendship. Prata, too, had a clinical history and condition which fairly made his capacity to testify a subject of inquiry.

Doucette's appeal is sharply and commendably focused on the judge's refusal to allow defense counsel to ask questions of Van Dyke and Prata at the voir dire examinations into the testimonial competence of each. In the case of Van Dyke, the judge told the prosecution, "[Y]ou start with name, address,

---

[1] Motions to exclude certain of Doucette's prior convictions had been denied.

employment, if any, and I will take it from there." The assistant district attorney strayed beyond those suggestions. She asked whether Van Dyke was taking any medications that day (i.e., at trial), what the medications were and how often and when he took them, and whether they had any effect on his ability to see, hear, or comprehend. The prosecutor also inquired how often Van Dyke saw a Department of Mental Health therapist (once a week) and how often he made sure his medication level was maintained (once a month). The judge then took over the inquiry, putting questions designed to establish whether Van Dyke was oriented as to where he was, what the proceedings were about, their purpose, and his (Van Dyke's) role in those proceedings.

At the conclusion of his interrogation of Van Dyke, the judge (who had also read the grand jury minutes) announced that he found beyond a reasonable doubt that Van Dyke was competent to testify and that he had "sufficient capacity to perceive, remember and recount knowledge of facts."

It is settled that the competence of a witness to testify is solely for the sound discretion of the judge. *Commonwealth* v. *Sires,* 370 Mass. 541, 546 (1976). A person may be insane but, nonetheless, a competent witness. *Ibid.* A determination of testimonial capacity (ability to observe, remember, and recount) will rarely be faulted on appellate review. *Commonwealth* v. *Whitehead,* 379 Mass. 640, 656 (1980). *Commonwealth* v. *Jimenez,* 10 Mass. App. Ct. 441, 443 (1980). It is the tendency, the court observed in *Whitehead,* to let the witness testify and have the trier of fact "make any proper discount for the quality of" the understanding of the witness. *Commonwealth* v. *Whitehead,* 379 Mass. at 656. See also 2 Wright, Federal Practice and Procedure § 405 & n.21 (2d ed. 1982). Defense counsel were allowed a full range of cross-examination of Van Dyke and Prata, a right which counsel for Cassista, particularly, exploited to bring to the jury's attention that Van Dyke and Prata had experienced delusions of persecution and were clients of the government by reason of mental and emotional insufficiency.

As to how the inquiry into competence shall be conducted, Federal courts have held that the form of inquiry also rests in the discretion of the court. See *Henderson* v. *United States,* 218 F.2d 14, 17 (6th Cir.), cert. denied, 349 U.S. 920 (1955); *United States* v. *Gerry,* 515 F.2d 130, 137 (2d Cir. 1975). The *Gerry* opinion suggests that a formal competence hearing, although the mode, is not required. It is within the discretion of the trial judge to conduct the voir dire alone, without the assistance of any questioning by counsel. See *United States* v. *Spoonhunter,* 476 F.2d 1050, 1055 (10th Cir. 1973); *State* v. *Singh,* 586 S.W.2d 410, 415 (Mo. App. 1979); *Smith* v. *United States,* 414 A.2d 1189, 1198 (D.C. 1980). Cf. *Commonwealth* v. *Jimenez,* 10 Mass. App. Ct. at 443-444); *United States* v. *Crosby,* 462 F.2d 1201, 1202-1203 (D.C. Cir. 1972). In the case at bar, the judge appears to have intended an inquisitional voir dire conducted solely by him, at least as to any questions which pierced below surface facts. The prosecutor, as we have noted, went beyond name, address, and employment as specified by the judge, but her questions were scarcely of a probing quality. All the questions which tested whether the witness was aware of place, surroundings, and purpose were put by the judge.

For example:

"THE COURT: Mr. Van Dyke, do you know where you are today?

A: Yes, sir, in Newburyport, Superior Court.

THE COURT: Do you understand why you are here?

A: Yes.

THE COURT: What are you here for?

A: Case against extortion.

THE COURT: How does that involve you?

A: I'm the victim."

When a judge elects to conduct a competence voir dire without interrogation by counsel, it becomes the obligation of counsel to suggest questions that counsel desire the judge to ask. See *United States* v. *Spoonhunter,* 476 F.2d at 1055. See

also *State* v. *Singh,* 586 S.W.2d at 415; 6 Wigmore, Evidence § 1820, at 397-398 (Chadbourn rev. 1976). Trial counsel for Doucette did not suggest particular questions or subjects about which she wanted the judge to interrogate; rather, she pressed a right to conduct a general examination of the witness at that stage of the proceedings.

Doucette argues that his counsel's inability to inquire at the voir dire deprived him of his right of confrontation under the Sixth Amendment to the Constitution of the United States and of due process under the Fifth Amendment. The essence of the right of confrontation is to cross-examine the witness presented against the accused. See *Lee* v. *Illinois,* 476 U.S. 530, 539-543 (1986). It is a right not directly implicated in a preliminary competence hearing because at that stage it is not the accusations of the witness which are being tested, but the capacity of the witness to speak in court. At a voir dire in a jury case, such as this one, no accusations are made in the presence of the trier of facts. The right of the defendant to confront accusations of the witness through cross-examination remains in full force when the witness later testifies. That will ensure that the defendant is not convicted by the mouth of an unseen, unknown, and unchallenged accuser. *Lee* v. *Illinois,* 476 U.S. at 541-542.

There are reasons why voir dire interrogation into testimonial capacity may be limited to the judge. Every determination of witness qualification need not be the occasion for a miniature trial. The witness may be sufficiently vulnerable — a child, a retarded person, or someone on the edge of sanity — so that humane considerations dictate that the tender witness not be subjected to a double dose of cross-examination. See, e.g., *Commonwealth* v. *Jimenez,* 10 Mass. App. Ct. at 444. Compare *Commonwealth* v. *Dickerson,* 372 Mass. 783, 788-789 (1977), involving a voir dire on a motion to suppress identification testimony. Yet the right to be confronted with the witnesses against an accused has been understood to require the presence of counsel and the defendant at the voir dire. *Amado* v. *Commonwealth,* 349 Mass. 716, 721 (1965). *Commonwealth* v. *Robichaud,* 358 Mass. 300, 302-303 (1970). *United States* v.

*Ashe,* 478 F.2d 661, 666 (D.C. Cir. 1973). That right of presence, so that questions may at least be suggested to the judge, recognizes that once a witness is qualified to testify, the right to cross-examine is, from the defendant's vantage, second best; it becomes an exercise in damage control. *Smith* v. *United States,* 414 A.2d at 1199. Moreover, it is damage control which risks provoking jury hostility as defense counsel attempts to destroy the credibility of a vulnerable witness.

If a judge allows the prosecution to examine a witness at a competence hearing, is the defense, as a matter of fairness, also entitled to make reasonable inquiry? That is the view adopted by the court in *Smith* v. *United States,* 414 A.2d at 1198-1199, which held that, although the trial judge could conduct a voir dire on testimonial competence "without the help of counsel," once the court decided "to enlist the assistance of counsel it implied an election to proceed with an adversary voir dire.[2] See also *Commonwealth* v. *Hall,* 164 Mass. 152, 154-155 (1895); 5 Wigmore, Evidence § 1385, at 87 (Chadbourn rev. 1974). Cf. *United States* v. *Crosby,* 462 F.2d at 1203 (hearing into competence of witness must be as careful and complete as reasonably feasible); *State* v. *Pike,* 273 N.C. 102 (1968) (defendant had right to offer evidence at voir dire on motion to suppress). Compare *Commonwealth* v. *Morrell,* 99 Mass. 542, 545 (1868).

Once a judge has permitted the prosecution to examine a prospective witness as to competence, the reasons we have previously advanced for barring examination by defense counsel are eroded and we think that it offends fairness to allow one side to draw out that which is favorable for its purposes, but to bar inquiry by the other side entirely. Of course, the trial judge, in the context of a competence hearing, retains substantial discretion to restrict the subjects and the range of examination by counsel.

---

[2] The *Smith* court said further, at 1199; "Here, the trial court denied appellant the fundamental right to cross-examine a government witness whom the government itself had examined during the critical stage when the very competency of that witness — determining the government's right to bring that witness before the jury — was at issue. In so doing, the trial court deprived appellant of his Fifth Amendment right to due process."

In the case of the witness Prata, the judge conducted the voir dire examination entirely on his own. It remains to consider whether in the case of the witness Van Dyke the examination conducted by the prosecutor progressed beyond the introductory and mechanical. If that is as far as the prosecution's questioning went, it would elevate form over substance to invoke the principle that, if the government is allowed to inquire, the defense may inquire. We have already noted that the judge intended to limit the assistant district attorney's quesitons to introductory and mechanical ones. Realistically appraised, they did not proceed beyond that stage. Accordingly, the defendant was not treated unfairly when his counsel was refused permission to examine Van Dyke at the voir dire.

· Concerning the judge's denial of the defendant's request that the judge order, under G. L. c. 123, § 19, as appearing in St. 1970 c. 888, § 4, psychiatric evaluations of Van Dyke and Prata, it is enough to say that the judge's decision is a wholly discretionary one. *Commonwealth* v. *Fillippini,* 1 Mass. App. Ct. 606, 609 (1973). See *Commonwealth* v. *Widrick,* 392 Mass. 884, 888 (1984). The statute operates as a supplement to a judge's traditional method of assessing the competence of a witness. *Commonwealth* v. *Widrick, supra. Commonwealth* v. *Fillippini, supra.* The judge acted advisedly on the basis of his interviews of the witnesses and a reading of the grand jury minutes. There was no abuse of discretion.

*Judgment affirmed.*