## COMMONWEALTH *vs.* TIMOTHY O'BRIEN.

Suffolk. November 22, 1875. — January 4, 1876. COLT, J., absent.

Where a person accused of a criminal offence introduces evidence tending to show that his general reputation is good, it is not competent for the government in reply to put in evidence of particular facts.

On the trial of an indictment for an assault with a knife, the government called a witness who testified that on the evening of the assault a man came to his shop and bought a knife of the same make and style as the knife, which the government contended was in the hands of the defendant when the assault was committed; that he was not sure that the defendant was the man who bought the knife. He was then permitted against the defendant's objection to state a conversation which he had at the time of the sale with the man who bought the knife. *Held*, on a bill of exceptions, which did not state what the conversation was, that the defendant had no ground of exception to the admission of this conversation.

On the trial of an indictment for an assault with a dangerous weapon, to wit, with a knife, there was evidence that the assault was with a jack-knife. The judge ruled that a jack-knife, like that exhibited to the jury, was a dangerous weapon. *Held*, on a bill of exceptions, which did not more particularly describe the knife, that the court could not say as matter of law that the instruction was erroneous.

INDICTMENT charging the defendant with an assault on July 7, 1875, on James M. Ellis, with a certain dangerous weapon, to wit, with a knife, with the intent to kill. Trial in the Superior Court before *Bacon*, J., who allowed a bill of exceptions in substance as follows :

During the trial one Philip Wachtell, a dealer in hardware, was asked by the district attorney if he had ever seen the defendant before ; and he answered, " I can't swear I ever did. I

am not sure he is the man." He then proceeded to state that about six o'clock, on the evening of July 7, 1875, a man came to his shop, looked into his show-case, and wanted to be shown a knife. The district attorney then asked the witness to state the conversation that took place between them. The defendant's counsel objected, but the judge allowed the conversation to go in, notwithstanding the defendant's objection. The defendant excepted to this ruling and the evidence admitted under it. The witness then related the conversation that took place, stated that this person finally bought a knife of him for the sum of forty cents ; that it was a jack-knife, and was of the same make and style of the knife shown to him, (referring to a knife which the government contended was knocked out of the defendant's hand on the day of the alleged assault.) On cross-examination the witness reiterated his former statement that he would not swear the defendant was the person who had this conversation, and who purchased the knife. He further stated that he could not swear the knife produced was the knife he sold, as he had sold seven or eight dozen of the same style and make of knives within six months.

During the trial the defendant called several witnesses, who testified to the fact that the defendant had the reputation of being a peaceable and quiet person. The defendant did not testify in the case. After the evidence for the defence was closed, the government called one Davis, an officer, and offered to show by him that the defendant was one of four defendants named in an indictment for an assault upon one John Walsh. The defendant objected, but the judge admitted the evidence, and the defendant excepted.

The government then offered to put in the indictment above referred to, and the same was admitted, against the defendant's objection, on the ground that it was proper and material as affecting the reputation of the defendant. It was admitted by the government, before the judge gave this ruling, that this indictment had been returned at the present term of court, and had been placed upon file. Davis was not asked as to the reputation of the defendant, and no attempt was made by the government, other than by the introduction of this indictment, to refute the evidence introduced by the defendant, as to the reputation of the defendant

as a peaceable and quiet person. It appeared by indorsements on the indictment that the defendant pleaded not guilty on August 7; on the 9th satisfaction was filed; on the 10th the defendant pleaded guilty, and the indictment was placed on file on payment of costs.

The defendant asked the judge to rule as follows: "1. If the jury believe that the knife was a common pocket-knife carried by O'Brien, (whether a large one or a small one is immaterial in this particular,) and that he did not arm himself with it for the purpose of an assault on Ellis, O'Brien cannot be said, within legal phraseology, to have been armed with a dangerous weapon.

"2. This knife is not in law what is called a dangerous weapon.

"3. It is a question of law for the court to decide whether the jack-knife was a 'dangerous weapon,' and the court is requested to rule in the negative.

"4. If the court refuses to so rule in either of its aspects, and it is thought to be a question of fact, the court is requested to rule that 'a dangerous weapon' *per se* is only a weapon which is intended in its natural and ordinary uses for the purposes of defence or offence only or mainly, and not one which, like a cane, or a case-knife, or an ordinary pocket-knife or jack-knife, which may occasion dangerous injury to life or limb when used with that purpose and that intent."

The judge refused to give either of the rulings, and ruled and instructed the jury as a matter of law that a jack-knife, like that exhibited to the jury, was a dangerous weapon; to which refusal to rule as requested, and to the ruling given, the defendant excepted.

The jury returned a verdict of "guilty of assault and battery with a knife, but without intent to kill and murder, as alleged." The defendant alleged exceptions.

*G. W. Searle*, for the defendant.

*W. C. Loring*, (*C. R. Train*, Attorney General, with him,) for the Commonwealth.

ENDICOTT, J. The defendant called witnesses who testified to his general reputation as a peaceable and quiet citizen. The government was then allowed to prove that the defendant had been indicted for an assault, and to put in evidence an indictment,

wherein he was, with other persons, indicted for an assault upon one John Walsh. To this indictment it appeared that the defendants pleaded not guilty; two days afterwards satisfaction was filed, and on the day following the plea was retracted by the defendants, and they pleaded guilty. The indictment was then placed on file on payment of costs, which were paid, but no sentence was passed. The evidence thus admitted to meet evidence of general reputation, was, in substance, that the prisoner had committed another assault, and had in court admitted or confessed the same by a plea of guilty. And the question is, can a particular fact be proved to rebut evidence of a general reputation.

Where a party undertakes to show that his reputation is good, or that the reputation of the other party or a witness is bad, he cannot put in evidence of particular facts to prove the general reputation he is endeavoring to establish. And to meet evidence of general reputation the opposing party may put in evidence to the contrary of a like general character. But he cannot prove particular facts for the reason that a particular fact does not necessarily establish a general reputation or fairly meet the issue presented, and may also raise collateral issues; and for the further reason that while a party is presumed always to be ready to defend his general reputation, he is not expected to be prepared to meet a distinct and specific charge. *Peterson* v. *Morgan*, 116 Mass. 350.

In *Commonwealth* v. *Hardy*, 2 Mass. 303, 318, it was said by Chief Justice Parsons : " It is not competent for the prosecutor to go into this inquiry, until the defendant has voluntarily put his character in issue, and in such case there can be no examination as to particular facts." See *Commonwealth* v. *Sacket*, 22 Pick. 394 ; *Commonwealth* v. *Webster*, 5 Cush. 295.

In a case heard before all the judges of England, it was held that, if evidence of good character is given in behalf of the prisoner, evidence of bad character may be given in reply ; but in either case the evidence must be confined to the prisoner's general reputation, and the individual opinion of the witness as to his disposition, founded on his own experience and observation is inadmissible. Chief Justice Cockburn, in delivering the opinion of the court, says: " The only way of getting at it [his character]

is by giving evidence of his general character founded on his general reputation in the neighborhood in which he lives." " It is quite clear that, as the law now stands, the prisoner cannot give evidence of particular facts, although one fact would weigh more than the opinion of all his friends and neighbors. So, too, evidence of antecedent bad conduct would form equally good ground for inferring the prisoner's guilt, yet it is quite clear evidence of that kind is inadmissible." Again, in speaking of the limits of rebutting evidence, where the prisoner puts in evidence of good character, he says, " I think that that evidence must be of the same character and confined within the same limits, — that as the prisoner can only give evidence of general good character, so the evidence called to rebut it must be evidence of the same general description, showing that the evidence which has been given in favor of the prisoner is not true, but that the man's general reputation is bad." The judges who dissented admitted that evidence of particular facts was inadmissible, but were of opinion that the testimony of a witness founded on his own experience and observation went to show disposition and was therefore admissible on the question of character. Chief Justice Erle said : " I agree that evidence of individual facts is to be excluded ; but whether the answer given by the witness in this case is in the nature of an individual fact or not I do not stop to inquire, because a question of very general importance has been raised ; and, with reference to that question, I am of opinion that the answer, understood as evidence of disposition, is admissible." *Regina* v. *Rowton*, Leigh & Cave C. C. 520 ; *S. C.* 10 Cox C. C. 25 ; and 2 Lead. Crim. Cas. (2d ed.) 333, 351, and notes.

It is true that upon cross-examination of a witness, testifying to general reputation, questions may be put to show the sources of his information, and particular facts may be called to the witness's attention, and he may be asked if he ever heard of them ; but this is allowed, not for the purpose of establishing the truth of these facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given to his testimony. *Leonard* v. *Allen*, 11 Cush. 241. *Rex* v. *Martin*, 6 C. & P. 562. So in actions for slander, evidence of general bad character of the plaintiff may be put in evidence in mitigation of damages ; and where the plaintiff alleges that the defendant has slandered him

in a particular respect, as for thieving, the defendant may put in evidence for the same purpose that the plaintiff's general reputation in that respect is also bad. *Clark* v. *Brown*, 116 Mass. 504. But we are not aware of any case, where the defendant upon that issue has been allowed to prove a particular act of theft.

We are of opinion therefore that the learned judge erred in admitting this evidence. The government was entitled to rebut the evidence of the defendant, he having put his character in issue, but could not do so by proof of another assault.

The evidence of Wachtell that, on the night of the assault, he sold, to a person who called at his shop, a knife similar to the knife which the government contended was in the hands of the defendant at the time of the assault, was competent; although Wachtell could not positively identify the defendant as the purchaser. The fact that the defendant was the purchaser might have been established by other evidence. As the conversation between Wachtell and the purchaser is not reported, we are unable to say that it was improperly admitted. It might have been entirely immaterial, in no way bearing on the guilt of the defendant. As the defendant has failed in his bill of exceptions to show that it was material, or that he has been injured by it, this exception must be overruled.

The same answer will apply to the ruling that a jack-knife, like that exhibited to' the jury, was a dangerous weapon. That it was not a dangerous weapon as matter of law, the defendant has given us in his bill of exceptions no means of determining.

*Exceptions sustained.*