## COMMONWEALTH vs. EUGENE GRAZIANO
## (and a companion case[1]).

Hampden.    April 8, 1975. — July 19, 1975.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Homicide. Joint Enterprise. Evidence,* Judicial discretion, On cross-examination. *Practice, Criminal,* Argument by prosecutor.

Evidence at a murder trial warranted findings that the defendant participated in a common enterprise to threaten and rob the proprietor of a package store, who was shot while the defendant was in it with other participants, and that the defendant was guilty of murder in the second degree even though killing was not part of the common plan. [328]

It was error requiring a new trial of two defendants convicted of armed robbery and murder for the judge to refuse to allow them to develop evidence in cross-examination of the principal prosecution witness that he had the motive, opportunity and instruments to commit the crimes and had committed them and was trying to shield himself and to shift the blame to the defendants. [329-330]

At a criminal trial, where both of the defendants and several of their alibi witnesses were of Italian origin, references by the prosecutor in his closing argument to a best selling novel and motion picture portraying Italian members of organized crime went beyond permissible limits, even though the prosecutor took his cue from defense counsel. [331-332]

INDICTMENTS found and returned in the Superior Court on September 28, 1972.

The cases were tried before *Travers,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Robert M. Santaniello (Jay M. Forgotson* with him) for the defendant Graziano.

[1] Commonwealth *vs.* Antonio Facente.

*Efrem A. Gordon* for the defendant Facente.

*John T. McDonough,* Assistant District Attorney (*Daniel E. O'Malley* with him) for the Commonwealth.

BRAUCHER, J.  Each of the two defendants appeals from convictions of armed robbery and murder in the second degree.  G. L. c. 278, §§ 33A-33G.  We reverse the convictions and order a new trial because of error in restricting the defendants' cross-examination of the principal prosecution witness.  We also disapprove references, in the prosecutor's summation to the jury, to the ethnic origin of the defendants and some of their witnesses.

The victim, William Griffin, a black man, the proprietor of a package store in Springfield, was murdered on the evening of Labor Day, September 4, 1972.  His body was found by the police at 10:30 P.M. in front of his store.  The cause of death was a .32 caliber gunshot wound in his chest.  Paper money was lying on the floor of the store and on a counter, and some $200 was missing.

The case against the defendants depended entirely on the testimony of John Owens, Jr., a black man, an entertainer and paid informer for the Federal Bureau of Narcotics and Dangerous Drugs.  He testified that on the day of the murder he had been with the defendant Graziano from about 11 A.M. until after 10 P.M., and that the defendant Facente and two men named Cash and Dino had been with them during parts of that period.  Owens testified to conversations, in which Graziano participated in Facente's presence, about collecting $8,500 Griffin owed them for cocaine. Between 5 P.M. and 6 P.M., Owens said, he and Graziano went to Griffin's store and had a conversation about the money. Later that evening Owens, Graziano, Facente and Dino returned to the store.  Owens stayed in the car with the motor running while the other three, each armed with a gun, entered the store.  Through the window of the store Owens saw Griffin and Graziano talking, saw Graziano

throw up his hands, heard a shot, and saw Graziano reaching toward the cash register. The three men then returned to the car and Facente drove them away.

There was very little corroboration of Owens's account of these events. A woman friend of Owens and Graziano testified that she had been at the package store about 5 P.M., that Graziano and a black man, but not Owens, were present with Griffin, and that Graziano threatened to kill Griffin. Several Federal agents testified to meetings between Owens and one or both of the defendants, but at other times and places. A number of defense witnesses contradicted details of Owens's account of the events of the day of the crime. Owens was in contact with Federal agents and Springfield police on days following the murder, but told what he had seen only after he was taken into custody some three weeks later. At the time of the trial he was in jail on a charge of being an accessory to the murder.

The defendants presented extensive alibi evidence. Each testified in detail to his whereabouts on September 4, 1972, giving locales different at all material times from those given by Owens. Numerous witnesses corroborated particulars of their testimony, which placed them together with the witness Cordi from before 6 P.M. until after 10:30 P.M.

The cases were tried together on nineteen trial days from January 9 to February 2, 1973, and after trial hearings were held on two motions for a new trial filed by each defendant. Some 2,743 pages of transcript are before us, disclosing eighty exceptions by the defendant Graziano and 120 by the defendant Facente. Each defendant argues numerous assignments of error. We consider only the denial of the motions of the defendant Facente for directed verdicts, the claim of both defendants that cross-examination of Owens was unduly restricted, and their claim that the prosecutor's summation to the jury was improper.

1. *Facente's motions for directed verdicts.* The defendant Facente argues that the evidence fails to show that he was involved in a common scheme to commit armed robbery, relying on the principle that "mere presence at the commission of the wrongful act and even failure to take affirmative steps to prevent it do not render a person liable as a participant." *Commonwealth v. Benders,* 361 Mass. 704, 708 (1972). *Commonwealth v. Clark,* 363 Mass. 467, 473 (1973).

Considered in the light most favorable to the Commonwealth, however, the evidence warranted an inference that Facente was a participant in a common enterprise to threaten and rob Griffin. According to Owens, Facente and Graziano were together continuously most of the day of the crime. Facente was present when the problem of collecting money from Griffin was discussed and when Graziano asked Owens to kill Griffin. Facente said, "We're going to take a ride up there," and told Owens to drive on the fatal trip. Facente entered the store with two other armed men, while Owens stayed in the car with the motor running. After the shooting, the three men left the store in "a normal walk," and Facente told Owens to push over and drove the car away.

Although there was evidence that the purpose of the visit to the store was to warn Griffin to raise the money within twenty-four hours, an inference was nevertheless warranted that the defendants intended to confront Griffin and take whatever money he then had. Cf. *Commonwealth v. Venuti,* 315 Mass. 255, 258 (1943); *Commonwealth v. Flynn,* 362 Mass. 455, 479 (1972). Facente could be found guilty of murder even though killing was not part of the common plan. *Commonwealth v. Devereaux,* 256 Mass. 387, 395 (1926). *Commonwealth v. Devlin,* 355 Mass. 555, 567 (1957). It is no ground for reversal that he was convicted of murder in the second degree rather than murder in the first degree. *Commonwealth v. Chase,* 350 Mass. 738, 744 (1966).

2. *Limitation of cross-examination.* The testimony of Owens was critical to the Commonwealth's case. Only he directly linked the defendants to the crime. The only corroboration of his account of the day of the murder was the testimony of his woman friend that she had heard Graziano threaten the victim. She contradicted Owens's testimony that Owens was present in the store about 5 P.M.

On cross-examination of Owens the defendants asked about his dealing in drugs and his ownership of a .32 caliber gun. Objections to these questions resulted in extended colloquies at the bench, in which the defendants offered to show that Owens had such a gun and ammunition for it, that he had engaged in drug traffic with the victim, that the victim owed him money for cocaine, that he hid from the police after the murder, and that he did not accuse the defendants until he had himself been accused of the crime. The stated purposes of the defendants were to impeach Owens's credibility by eliciting testimony inconsistent with his statements before trial and with his testimony on direct examination, and to show that he had the motive, opportunity and instruments to commit the crime and indeed had committed it and was trying to shift the blame to the defendants, who were innocent.

The judge ruled that he would not allow the defendants to develop such evidence on the basis of "surmise and conjecture." He consistently adhered to that ruling, not only in the cross-examination of Owens but also in the interrogation of other witnesses as to Owens's statements before trial. This was error on two grounds.

First, a defendant may introduce evidence to show that another person committed the crime or had the motive, intent and opportunity to commit it. *Commonwealth* v. *Murphy,* 282 Mass. 593, 597 (1933). See Wigmore, Evidence, §§ 139, 141 (3d ed. 1940). The evidence should not be too remote in time or too weak in

probative quality, and it should be closely related to the facts of the case against the defendant. Cf. *Commonwealth* v. *Geraway*, 355 Mass. 433, 440-441 (1969). The judge's discretion to exclude such evidence is not absolute and his ruling may be set aside if justice requires a different decision. *Commonwealth* v. *Murphy*, 282 Mass. at 598. The defendants were not required to pursue their line of questioning in the face of the judge's unequivocal adverse ruling. Cf. *Commonwealth* v. *Geagan*, 339 Mass. 487, 509-510 (1959), cert. den. 361 U. S. 895 (1959); *Commonwealth* v. *Caine*, 366 Mass. 366, 370, n. 4 (1974). We think they were entitled to introduce evidence that Owens was as likely as they to have committed the murder. Cf. *Commonwealth* v. *Murphy*, 282 Mass. at 597, 600; *Holt* v. *United States*, 342 F. 2d 163, 165-167 (5th Cir. 1965); *State* v. *Rosenberg*, 238 Iowa 621, 625-627 (1947); *State* v. *Smith*, 377 S. W. 2d 241, 245-246 (Mo. 1964).

Second, reasonable cross-examination of a witness for the purpose of showing bias is a matter of right which may assume constitutional dimensions. *Commonwealth* v. *Michel*, 367 Mass. 454, 459-460 (1975), and cases cited. Cf. *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 818-819 (1973). Evidence that Owens's conduct made it likely that he would be a suspect, that he was in fact suspected, and that he thought he was suspected was relevant to his motive in testifying and therefore to his credibility. See *Davis* v. *Alaska*, 415 U. S. 308, 316-318 (1974); *Commonwealth* v. *Ferrara*, *ante*, 182, 186-190 (1975). The reliability and credibility of Owens was essential to the proof of the defendants' guilt, and refusal to allow cross-examination designed to show that his motive for testifying was to shield himself was a serious error which requires a new trial. *United States* v. *Lester*, 248 F. 2d 329, 334-335 (2d Cir. 1957). *Green* v. *State*, 258 Ala. 471, 474-475 (1953). *State* v. *Holden*, 88 Ariz. 43, 56-57 (1960). *Watts* v. *State*, 18 Tex. App. 381, 384-

385 (1885). *State* v. *Warner,* 79 Utah 510, 514-515 (1932). See *Chambers* v. *Mississippi,* 410 U. S. 284, 297-298 (1973).

3. *Ethnic argument.* Both of the defendants and several of their alibi witnesses were of Italian origin, and an interpreter was appointed to aid the defendants. More than a dozen prospective jurors with Italian names were excused for a variety of reasons, including several peremptory challenges by the Commonwealth, and no jurors with such names were selected. The prosecutor, complaining of the small number of blacks among the prospective jurors, noted that "some of the jurors at a prior time have indicated a desire not to serve because they may be prejudiced because they're Italian."

Cordi, an alibi witness, testified that he was the godfather of Facente's child, and told of the wedding of his secretary on the day of the murder and of an encounter between the defendants and the wedding party, and counsel for Graziano referred in closing argument to this testimony and confirming testimony of members of the wedding party. Counsel for Facente, referring to his client as a "new arrival from Italy," spoke sarcastically of the prosecution's attempt to portray Facente as "the Al Capone of Springfield." Counsel also asserted his own belief "that members of families, especially from the old country, don't lie."

In this setting, the prosecutor, early in his summation, said, "Talk about an interpreter, they know English better than I do." Later, he dealt with the argument that "the people in the old country don't lie. I suppose the inference you can gather from that is the people in this country do lie. . . . I don't know how you make that determination . . .. People are universal. Same kind of people there as there are here . . .." Then he said, "We've even got the godfather in this case. The godfather, we've got the wedding, we've got every party of it. Whose wedding? The godfather's secretary's

wedding. Who's the next witness, the godfather's secretary's brother, and what did the two of them say when they got on the stand." Describing the witness Cordi, he said, "Cosimo Cordi. Great pal. All come from Italy." Referring to testimony that Cordi had said he was frightened, he said, "This is a case of the frightened godfather. I'll tell you what else we've got here. I didn't bring this in the case, with his Italian language he says the big shot, the Al Capone, what about these two people? They've got a lot of people scared." Later he referred to Al Capone twice more, along with references to "traffickers in narcotics," "the scourge of our society today, narcotics," and the like.

The defendants interrupted the prosecutor's argument only once, when he argued that Owens was a reliable narcotics informer, asked, "He had an assignment, what was his assignment?" and answered his own question, "These two men." The judge promptly instructed the jury to disregard the remark, and no exception was taken. Nor were objections made, exceptions taken, or curative instructions requested at the close of the argument. See *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 27-28 (1923). Nevertheless, we think we must take note of the references to Mario Puzo's best selling novel and motion picture, "The Godfather," portraying Italian members of organized crime. G. L. c. 278, § 33E.

In context, those references were calculated to appeal to prejudice based on national origin, and thus "to sweep jurors beyond a fair and calm consideration of the evidence." *Commonwealth* v. *Perry*, 254 Mass. 520, 531 (1926). Contrast *Commonwealth* v. *Velleco*, 272 Mass. 94, 99 (1930). The prosecutor took his cue from defense counsel, but the evidence against the defendants was not at all overwhelming, and we think the appeal to popular ethnic stereotypes went beyond permissible limits. Cf. *Fontanello* v. *United States*, 19 F. 2d 921, 922 (9th Cir. 1927); *United States ex rel. Haynes* v. *McKendrick*,

481 F. 2d 152, 159 (2d Cir. 1973); *People* v. *Maria*, 359 Ill. 231, 236 (1935).

*Judgments reversed.*
*Verdicts set aside.*