COMMONWEALTH *vs.* ELBA PIEDRA.

Suffolk.  December 13, 1984. — June 3, 1985.

Present: GREANEY, C.J., ARMSTRONG, & BROWN, JJ.

*Witness,* Impeachment, Competency. *Evidence,* Cross-examination, Repu-
tation. *Practice, Criminal,* Challenge of jurors, Grand jury proceedings.

Reversal of a defendant's conviction for being an accessory before the fact
    to larceny was required where the judge prohibited the defendant from
    introducing evidence of an alleged sexual affair between the defendant's
    son and the wife of the key prosecution witness in order to show that
    the witness harbored a particular bias against the defendant and a motive
    for falsely accusing her. [156-158]
A criminal defendant's testimony before the grand jury that indicted her
    was admissible in evidence at her trial. [159]
Discussion of how a trial judge should treat the issue of the mental compe-
    tency of a key prosecution witness upon retrial of a criminal case.
    [159-160]
Discussion of the appropriateness of a trial judge's permitting the prosecution
    to cross-examine a character witness as to whether she had heard that
    the defendant had committed particular criminal acts. [160-161]

INDICTMENT found and returned in the Superior Court De-
partment on May 6, 1982.

The case was tried before *Herbert Abrams,* J.

*Arthur D. Serota* for the defendant.

*Paul Cirel,* Assistant Attorney General, for the Common-
wealth.

BROWN, J. The defendant appeals from her conviction of
being accessory before the fact to larceny. The larceny involved
was committed by her employer, Dr. Irwin Klepper, who de-
frauded the Department of Public Welfare of approximately
$500,000.

The defendant raises several claims of error. She argues (1)
that the prosecutor improperly used peremptory challenges to
exclude nonwhite jurors; (2) that the trial judge erred in allow-

ing in evidence certain grand jury testimony of the defendant; (3) that the judge explained the purpose and function of the grand jury in a manner that was harmful to the defendant; (4) that the judge erred in not striking the allegedly incompetent testimony of Dr. Klepper, the key prosecution witness; (5) that the judge incorrectly prohibited the defendant from showing that Klepper was biased against her because her son had engaged in an affair with Klepper's wife; and (6) that the judge erroneously denied the defendant's motion to limit cross-examination of a character witness she proposed to call.

We conclude that it was improper for the judge to prohibit the defendant from introducing evidence of an alleged affair between the defendant's son and Klepper's wife. The defendant was entitled to show that Klepper harbored a particular bias against her and a motive for falsely accusing her. Compare *Commonwealth* v. *Morris, ante* 114, 117-119 (1985). Contrast *Commonwealth* v. *Graziano*, 368 Mass. 325, 329-330 (1975). Accordingly, we reverse the judgment of conviction and remand for a new trial.

A rehearsal of all the facts would serve no useful purpose; where, however, factual background is necessary to a discussion of the issues, we will allude to particular facts.

"A defendant has the *right* to bring to the jury's attention any 'circumstance which may materially affect' the testimony of an adverse witness which might lead the jury to find that the witness is under an 'influence to prevaricate' " (emphasis original). *Commonwealth* v. *Haywood*, 377 Mass. 755, 760 (1979), quoting from *Commonwealth* v. *Marcellino*, 271 Mass. 325, 327 (1930). In addition, "a defendant may introduce that evidence through, . . . 'any *competent* means' (emphasis added), including 'reasonable' cross-examination of the witness [citation omitted], or extrinsic evidence [citation omitted]." *Commonwealth* v. *Brown*, 394 Mass. 394, 397 (1985). Although evidence of bias may properly be limited when the issue has been "sufficiently aired" (*Commonwealth* v. *Hicks*, 377 Mass. 1, 8 [1979]), there is no discretion "to prohibit all inquiry into the subject." *Commonwealth* v. *Martinez*, 384 Mass. 377, 380 (1981). Cf. *Commonwealth* v. *Henson*, 394 Mass. 584, 586 (1985), and cases cited.

"When a possibility of bias exists, . . . even if remote, the evidence is for the jury to hear and evaluate." *Commonwealth* v. *Henson,* 394 Mass. at 587. Here, the defendant attempted to bring to the jury's attention a conversation she had with Klepper, her principal accuser. The judge permitted the defendant to testify only to that part of the conversation in which Klepper admitted that he had falsely implicated her in his wrongdoing and that he "will never say the truth." The judge, however, excluded all references to the part of the conversation in which Klepper alleged the defendant's son had had an affair with Klepper's wife.[1] Compare *Commonwealth* v. *Graziano,* 368 Mass. at 329-330. Although Klepper's bias in favor of the Commonwealth was developed to some extent, that sexual relationship, of which the defendant claimed Klepper strongly disapproved, was, by far, the most significant evidence offered which would have tended to show that the witness was "under an influence to prevaricate."

Notwithstanding the extensive testimony concerning the severity of the fractious rift that had developed between the defendant and Klepper over Klepper's personal relationship with her son and Klepper's unwelcome interference in the son's rearing, evidence respecting Klepper's motive in accusing the defendant was conspicuously lacking. Contrast *Commonwealth* v. *Morris, ante* at 117-119. An opportunity to show a witness's bias in general is not necessarily a substitute for specific inquiry on the issue of motive. See *Commonwealth* v. *Connor,* 392 Mass. 838, 841 (1984). Compare *Commonwealth* v. *Walker,* 370 Mass. 548, 572, cert. denied, 429 U.S. 943 (1976), and cases cited. Contrast *Commonwealth* v. *Ahearn,* 370 Mass. 283, 287 (1976). As a source of human motivation, mere anger stemming from rejection of officious involvement in the life of another's child pales beside discovery that one's spouse actually has become sexually involved with

---

[1] At the conclusion of a lobby conference, at which the admissibility of the impeaching evidence was discussed, the judge ordered defense counsel to instruct the defendant not to relate that part of the conversation in which Klepper allegedly said: "And I did this [to you], Elba, because your son had an affair with my wife."

another. Cf. *Commonwealth* v. *Connor, supra.* The finder of fact might well believe that an illicit affair would register quite a bit higher on the outrage meter. Cf. *Commonwealth* v. *Schnopps*, 383 Mass. 178, 180-181 (1981) (discovery of spouse's adultery deemed sufficient evidence of provocation).

A similar problem had arisen earlier on cross-examination of Klepper when the judge excluded a question put to Klepper seeking to ascertain whether he, at some point, had learned the defendant's son was having an affair with Klepper's wife.[2] Based on the offer of proof[3] we think on retrial the judge should allow that question if propounded in substantially similar form. See *Commonwealth* v. *Connor, supra.* The credibility of Klepper was "essential to the proof of the defendant's guilt, and refusal to allow cross-examination designed to show his motive for testifying [as he did] . . . [would be] a serious error." *Commonwealth* v. *Graziano*, 368 Mass. at 330. Compare *Commonwealth* v. *Morris, ante* at 118. It is always preferable that "[e]vidence of statements favorable to the defendant come [ ] from the lips of the witnesses for the prosecution" rather than the defendant. *Commonwealth* v. *Britland*, 300 Mass. 492, 496 (1938). See *Commonwealth* v. *Morris, ante* at 119. "[C]oming from the defendant alone, [the statements] might be viewed with the suspicion that they were of later invention." *Commonwealth* v. *Britland, supra.*

For guidance, we briefly address the defendant's other claims of error in so far as they may have relevance on retrial.

1. *Use of peremptory challenges by the Commonwealth.* The defendant contends that the Commonwealth's use of its peremptory challenges violated the principles set forth in *Commonwealth* v. *Soares*, 377 Mass. 461, 489-491, cert. denied, 444 U.S. 881 (1979); *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 292-293 (1981). This issue should not arise at retrial if counsel and the trial judge pay careful attention to

---

[2] "And can you tell us: at some point, getting back to [the defendant's son], you learned he was having an affair with your wife, is that correct?"

[3] We are mindful that "ordinarily, with respect to questions asked on cross-examination, no offer of proof is required." *Commonwealth* v. *Ahearn*, 370 Mass. at 286.

principles discussed in *Soares*. See also *Commonwealth* v. *Walker*, 379 Mass. 297, 301 (1979). But see *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 553 (1981). We reiterate, however, the cautionary note of *Commonwealth* v. *Soares*, 377 Mass. at 492, that "the right to be tried by an impartial jury is so basic to a fair trial that an infraction can never be treated as harmless error." *Commonwealth* v. *Wood*, 389 Mass. 552, 564 (1983). Cf. *Commonwealth* v. *Susi*, 394 Mass. 784, 789 (1985).

2. *Admission of grand jury testimony*. (a) Passing the question whether the judge within his discretion properly could refuse a hearing on the defendant's untimely motion to suppress grand jury testimony (see Mass.R.Crim.P. 13 [d] [2] [A], 378 Mass. 873 [1979]), we think that the defendant's testimony in the grand jury proceedings was admissible. Nowhere in this record has it been made to appear that the defendant was "misinformed or led astray by the Commonwealth." *Commonwealth* v. *Weed*, 17 Mass. App. Ct. 463, 469 (1984). To the contrary, the record reflects that an assistant attorney general informed the defendant that she was one of the persons on whom the investigation was focusing. She was given her full Miranda warnings and advised of her right to have counsel present to assist her at the grand jury proceedings. See and compare *United States* v. *Washington*, 431 U.S. 181, 188 (1977).

(b) The defendant moved for a mistrial based on the alleged harm arising out of the judge's instructions to the jury on the purpose and function of a grand jury. At retrial, the decision whether to discuss the function of the grand jury will rest with the judge, who properly may "actively solicit[ ] counsel's views on how counsel want[s] the matter handled." *Commonwealth* v. *Williams*, 378 Mass. 217, 229 (1979).

3. *Testimony of Klepper*. The defendant claimed that Klepper was not competent to testify and moved to strike his testimony. See G. L. c. 233, § 20. "It is well settled that the question of the competency of a witness to testify is solely for sound discretion of the judge." *Commonwealth* v. *Sires*, 370 Mass. 541, 546 (1976).

(a) There was no doubt that the witness had been and still may have been severely mentally disturbed. A mentally ill person, however, "is not necessarily an incompetent witness." *Commonwealth* v. *Jimenez*, 10 Mass. App. Ct. 441, 444 (1980). See *Commonwealth* v. *Gibbons*, 378 Mass. 766, 771 (1979). A witness's mental condition is merely a factor for the finder of fact to weigh in assessing credibility. See *Commonwealth* v. *Sires*, 370 Mass. at 546; *Commonwealth* v. *Jimenez, supra*.

We, however, have no way of knowing, nor are we able to predict, Klepper's mental state at the time of retrial. If it again is placed in issue, the trial judge should handle the question of the witness's then competency in accordance with the statutory standard (G. L. c. 233, § 20), as further explained by *Commonwealth* v. *Gibbons*, 378 Mass. at 770, and authorities cited. See also *Commonwealth* v. *Whitehead*, 379 Mass. 640, 656 (1980), quoting from *Commonwealth* v. *Tatisos*, 238 Mass. 322, 325 (1921); *Commonwealth* v. *Jimenez*, 10 Mass. App. Ct. at 443.

(b) The defendant requested that Klepper be ordered to submit to a psychiatric examination. The decision to order such an examination of a witness is discretionary. *Commonwealth* v. *Fillippini*, 1 Mass. App. Ct. 606, 609 (1973). *Commonwealth* v. *Jimenez*, 10 Mass. App. Ct. at 444.

4. *Cross-examination of character witness.* The judge ruled that the defendant's character witness could be cross-examined as to the witness's knowledge of a specific instance of bad conduct that occurred eleven years prior to the trial. When evidence of good character is put forth, the Commonwealth may test through cross-examination the sufficiency of the basis of the witness's reputation testimony. See *Commonwealth* v. *O'Brien*, 119 Mass. 342, 346 (1876). See also Liacos, Massachusetts Evidence 418-419 (5th ed. 1981). In the absence of a showing of bad faith, the prosecutor can ask a character witness whether she has heard that the defendant had committed particular criminal acts inconsistent with the reputation vouched for on direct examination. See *Commonwealth* v. *O'Brien, supra.* See also McCormick, Evidence § 191, at 456-457 (3d

ed. 1984). Although it would not be clear error for a judge to permit such an inquiry of the witness in the instant circumstances, we think that the new trial judge should consider the propriety of the use of such stale information. Cf. *Commonwealth* v. *Roberts*, 378 Mass. 116, 127 (1979); *Commonwealth* v. *Felton*, 16 Mass. App. Ct. 63, 66 (1983); *Commonwealth* v. *Denson*, 16 Mass. App. Ct. 678, 683 (1983). If the defendant chooses to call this character witness again, the defendant would be entitled to an appropriate limiting instruction to protect against any undue prejudice. See, e.g., *Michelson* v. *United States*, 335 U.S. 469, 473 n.3. (1948).

> *Judgment reversed.*
>
> *Verdict set aside.*