## COMMONWEALTH vs. JOSEPH MONTANINO.

No. 88-P-88.

Middlesex.    October 6, 1988. — March 21, 1989.

Present: GREANEY, C.J., SMITH, & FINE, JJ.

*Indecent Assault and Battery. Evidence*, Cross-examination, Reputation, Hearsay, Fresh complaint. *Witness*, Cross-examination. *Practice, Criminal*, Indictment.

At the trial of a defendant charged with indecent assault and battery on a child under the age of fourteen, during which the defendant introduced evidence of his good reputation in the community, including his reputation for morality and for not being the type of person who would be sexually involved with boys, the judge did not abuse his discretion in allowing the prosecutor to cross-examine the defendant's character witnesses about whether they had heard reports of prior allegations of sexual misconduct by the defendant, where the judge's actions both before and during the trial reduced the risk of prejudice that might have been caused by the cross-examination. [132-139]

No occasion for reversal of a conviction of indecent assault and battery on a child under the age of fourteen, (the defendant was acquitted by the same jury on a second indictment naming the victim's older brother as the complainant) was presented by the defendant's contention that the jury's consideration of that charge was tainted by the admission of out-of-court statements by the older brother, which the defendant alleged were used to bolster the younger brother's credibility, where the jury was twice instructed that the statements might be considered only for the purpose of corroborating the older brother's testimony, and only if they found the statements to qualify as a fresh complaint; where the older brother's testimony was not presented in evidence as vouching for the younger brother's credibility, and the Commonwealth did not argue that theory to the jury; and where the judge instructed the jury to consider each indictment against the defendant separately. [139-140]

At the trial of two indictments charging indecent assault and battery on a child under the age of fourteen, the judge did not err in the circumstances in denying the defendant's motion to dismiss one of the indictments for lack of specificity as to when the offense occurred. [140]

INDICTMENT found and returned in the Superior Court Department on May 31, 1985.

The case was tried before *Robert J. Hallisey*, J.

*Henry P. Sorett* (*Anne W. Chisholm* with him) for the defendant.

*Catherine E. Sullivan*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant, a police officer, was the subject of two indictments charging him with indecent assault and battery on a child under the age of fourteen.[1] The two victims named in the indictments are two brothers, Michael and Robert (fictitious names), ages eleven and thirteen at the time of the alleged offenses. The defendant was tried by a jury and was convicted on the indictment that charged him with indecent assault and battery on Michael and acquitted on the indictment that named Robert as the complainant. The defendant raises three issues on appeal. They are that the judge committed error in (1) allowing the prosecutor to cross-examine the defendant's character witnesses in reference to their awareness of other allegations of sexual misconduct by the defendant, (2) allowing fresh complaint testimony of Robert and his mother, and (3) refusing to dismiss for lack of specificity the indictment naming Michael as the victim.

The Commonwealth presented the following evidence. In the fall of 1982, Michael, then ten years old, joined a Boy Scout troop of which the defendant was the scoutmaster. His brother, Robert, had been in the same troop. Every Monday night, the defendant or the assistant scoutmaster would give Michael a ride to the church hall where the troop met and back to Michael's house. One Monday night in October, 1983, a month after Michael's eleventh birthday, the defendant gave

---

[1] Two additional indictments against the defendant were returned at the same time. Those indictments alleged that the defendant had raped another child under the age of sixteen some two years before the incidents which are the subjects of these indictments took place. The complainant was the same in both indictments and also was a former member of the Boy Scout troop of which the defendant was scoutmaster. The rape indictments were severed from the trial of these indictments.

Michael a ride home. The two were alone in the defendant's sportscar. The defendant asked Michael if he wanted to "drive" the automobile. Michael said "yes," climbed over to the driver's side, sat in the defendant's lap, and began steering the automobile.

As Michael sat in the defendant's lap, the defendant put his hand down Michael's pants, sliding his hand inside the underpants and down to the boy's testicles. The defendant rubbed Michael's testicles for about a minute. Frightened, Michael said nothing. He then jumped from the defendant's lap back to the passenger's side. The defendant asked if he "minded." Michael said nothing the rest of the way home. When Michael went inside the house, his family was asleep. The next morning he told his mother what had happened.

The defendant testified and admitted that there had been occasions when he was alone with Michael or his brother, driving them to and from Boy Scout meetings, but denied that he had sexually assaulted them. He also presented several witnesses who testified to his good reputation in the community. We now consider the issues raised by the defendant on appeal.

1. *Cross-examination of character witnesses.* Prior to the trial, defense counsel informed the trial judge and the prosecutor that he intended to call several persons as character witnesses. He stated that the witnesses would testify that the defendant had an excellent reputation in the community for truthfulness, honesty, integrity and morality. In regard to the last character trait, defense counsel informed the judge that the witnesses would also testify that the defendant had an excellent reputation for not being the type of person who would be sexually involved with boys. Defense counsel then made a motion that the judge order the Commonwealth not to cross-examine the character witnesses as to whether they had heard of prior allegations concerning the defendant's sexual misconduct with boys. The judge took no action on the defendant's motion at that time.

The defendant renewed his motion at the close of the Commonwealth's case. At a lobby conference, the judge ruled that, if the character witnesses testified that the defendant had a

good reputation for morality, they could be cross-examined as to their awareness of prior allegations that the defendant had been sexually involved with boys. In particular, the judge ruled that the witnesses could be cross-examined as to whether they had heard of the allegations that were the basis of the previously severed indictments (see note 1). The defendant objected to the denial of his motion.

The defendant presented sixteen character witnesses. Two were excused by the judge because their opinion as to the defendant's reputation in the community was based upon an insufficient foundation. The remaining character witnesses included police officers, Boy Scout officials, the city solicitor of Cambridge, and a high-ranking member of the Mormon church who also was a physician. They testified about the defendant's service in the Boy Scouts and as a police officer. The Boy Scout officials told the jury that the defendant had received several awards, including the Eagle Scout and Silver Beaver awards, and described the exacting standards that applied to the defendant's selection as an award recipient. All the character witnesses testified that the defendant had an excellent reputation in the community for, among other things, morality and for not being the type of person who would be sexually involved with boys.

Seven of the fourteen character witnesses were cross-examined concerning their awareness of the allegations that formed the basis of the severed indictments. Before the first character witness was subjected to cross-examination, the judge suggested to the prosecutor that she consider leaving out several details of the allegations in her questions. She complied with the judge's suggestion and omitted from the questions any reference to the name of the complainant in the severed indictments and any details of the allegations, including the information that the allegations concerned rape of a child. Typically, the form of the question to the witness was along the lines of: "Are you aware that there is another complaint [or allegation] against the defendant involving an incident between January and April of 1981, in Somerville [or Cambridge] involving another member of the troop?" Four witnesses testified that

they were aware of at least one of the allegations against the defendant. On redirect examination they were permitted to explain why they believed the defendant's reputation in the community was nevertheless good.

One of the character witnesses who testified for the defendant was the city solicitor of Cambridge. He was also president of the Cambridge Boy Scout council. He testified that the defendant had an excellent reputation in the Boy Scout community in Cambridge for truth and a superb reputation both for morality and for not being the type of person who would be sexually involved with boys. On cross-examination, he testified that he had heard of the prior allegations that had formed the basis of the severed indictments. The prosecutor then informed the judge at a bench conference that she wanted to question the witness in regard to a prior allegation of sexual misconduct made against the defendant involving a boy, independent of the allegations that resulted in the severed indictments. That complaint had been made by a Boy Scout to Boy Scout officials concerning an indecent assault allegedly committed on him by the defendant at a camp in New Hampshire. The judge found that such an allegation had been made. He allowed, over the defendant's objection, the prosecutor's request. The prosecutor then asked the witness whether another Boy Scout official had told him "about a complaint he received from another member [of the] defendant's troop, relative to some alleged sexual activity that occurred between the defendant and that Scout at the New Hampshire camp; did he tell you about that?" The witness acknowledged that he had had such a conversation. On redirect examination, the witness was allowed to testify, over the Commonwealth's objection, that the Boy Scouts had conducted an investigation of the New Hampshire allegation and determined that the defendant was not guilty of the charge. Later, the witness stated the police had brought no charges against the defendant. The prosecutor then asked the witness, "You learned, sir, that they administered a polygraph examination —." There was an objection, and the witness interposed, "I did not." The judge then interrupted the questioning and excused the witness. After a recess, the judge charged the jury,

at the request of the defendant, that "cross-examination of a reputation witness can appropriately inquire whether the witness was aware or had knowledge of certain other things which it is suggested are inconsistent with the quality about which he testified on direct, the defendant had a good reputation. But, we're not concerned about the truth in this case of those other matters, and you must keep in mind that the sole issue that you're going to decide is whether or not the Commonwealth has proved that the defendant is guilty of the matters involving the two [named] boys. So, keep your eye on the ball, please; it's not easy to follow in this area."

The prosecutor in her closing argument referred to the New Hampshire incident, over the defendant's objection. She told the jury that the Boy Scout officials had talked to the defendant but "they never talked to the kid. Never talked to the kid who said that the defendant did something to him . . . ."

In his charge to the jury the judge stated in regard to the cross-examination of the character witnesses that "[t]he cross-examination of those [character] witnesses, [in] particular[ ] as to whether they had heard of other things, was for a very limited purpose. Not to prove the truth of other things, that, in fact, other things happened, but merely to probe the strength and breadth of the foundation on which the witness testified as to the reputation. And you can use that sort of evidence only for that purpose."

On appeal, the defendant claims that Massachusetts does not permit the cross-examination of character witnesses on their awareness of prior allegations of misconduct by the defendant that are inconsistent with the character trait on which the witness has testified. He also argues that, even if such practice is allowed, the judge abused his discretion in this instance.

The rule in Massachusetts in regard to the admission of character testimony is that "the defendant in a criminal case may put in evidence his general good reputation in regard to the elements of character involved in the commission of the crime charged against him, for the purpose of establishing the improbability of his having done the wrong imputed to him."

*Commonwealth* v. *Belton*, 352 Mass. 263, 268 (1967), quoting from *Commonwealth* v. *Nagle*, 157 Mass. 554 (1893). Here, the defendant introduced in evidence his good reputation for morality, a character trait inconsistent with the commission of a sexual crime. Further, in regard to that character trait, the defendant was allowed to place in evidence his good reputation for not being the type of person who would be sexually involved with boys.

A defendant's character can be proved only by reputation and evidence of specific good or bad acts is not permitted. Liacos, Massachusetts Evidence 417-418 (5th ed. 1981). However, once a defendant calls a character witness to testify as to his good reputation for a particular character trait, most jurisdictions hold that trial judges may allow a prosecutor to cross-examine that witness as to his awareness of rumors or reports of prior acts of misconduct by the defendant, including prior arrests or convictions, that are inconsistent or conflict with the character trait to which the witness has testified. *Michelson* v. *United States*, 335 U.S. 469 (1948). See 3A Wigmore, Evidence § 988 (Chadbourn ed. 1970), for a list of jurisdictions which permit such cross-examination. Contrary to the defendant's claim, Massachusetts permits such cross-examination. *Commonwealth* v. *O'Brien*, 119 Mass. 342, 346 (1876). *Commonwealth* v. *Piedra*, 20 Mass. App. Ct. 155, 160-161 (1985).[2] Therefore, once the defendant put in evidence his good reputation for morality and for not being the type of person who would be sexually involved with boys, the Commonwealth had the right to cross-examine the witnesses about whether they had heard reports of prior misconduct concerning that character trait.

The purpose of the cross-examination is to "test the credibility of the witness, and to ascertain what weight or value is to be given to [the witness's] testimony." *Commonwealth* v.

---

[2] The defendant bases his argument that Massachusetts does not permit such cross-examination on two cases, *Commonwealth* v. *Marler*, 11 Mass. App. Ct. 1014, 1015 (1981), and *Commonwealth* v. *Kamishlian*, 21 Mass. App. Ct. 931, 933-934 (1985). Neither case supports the defendant's argument.

*O'Brien, supra.* The credibility of the witness is tested in the following manner — if the witness states that he has not heard of the report of prior misconduct, his professed knowledge of the defendant's reputation in the community may be doubted by the jury or, if he states that he has heard of the report but still testifies that the defendant's reputation is good in the community, the jury may consider whether the witness is fabricating or whether the community standards in regard to character are too low. See McCormick, Evidence § 191 n.28 (3d ed. 1984). In any event, the cross-examination is permitted solely for that purpose and it cannot be used to establish the truth of the prior misconduct or the bad character of the defendant. *Commonwealth* v. *O'Brien,* 119 Mass. at 346.

There is no question that the practice involves a considerable risk of prejudice to the defendant. Once the jury hear of the reports of prior misconduct, the same type of misconduct for which the defendant is standing trial, even with limiting instructions, they may be influenced in their determination of the defendant's guilt. See 3A Wigmore, *supra* § 988 at 920-921. Therefore, cross-examination of character witnesses requires close supervision; "[w]ide discretion is accompanied by heavy responsibility on trial courts to protect the practice from any misuse." *Michelson* v. *United States,* 335 U.S. at 480. A trial judge should be free to exercise discretion in refusing to allow reference to prior acts during the course of cross-examination in situations in which the prejudicial effect would likely outweigh any usefulness for testing the credibility of witnesses.

While the issue is close, we cannot say that the judge abused his discretion in this case.[3] His actions both before and during the trial reduced the risk of prejudice that might have been

---

[3] Because there were only a few Massachusetts decisions on the matter, the trial judge had little to guide him in supervising the cross-examination. The relevant case law at the time of the trial required that the prosecutor's inquiry be in good faith and relevant to the trait vouched for on direct examination (*Commonwealth* v. *Piedra, supra* at 160), the witness should not be asked his personal opinion (*Commonwealth* v. *Marler,* 11 Mass. App. Ct. 1014, 1015 [1981], *Commonwealth* v. *Kamishlian,* 21 Mass. App. Ct. 931, 933-934 [1985]), and limiting instructions should be given by the judge. *Commonwealth* v. *Peidra, supra* at 161.

caused by the cross-examination. Before permitting the cross-examination, he conducted an inquiry outside the presence of the jury. The allegations, he found, had been made and concerned sexual misconduct of the defendant with a boy, the specific trait that the character witnesses would be inquired of on direct examination. During the course of the trial, he made sure that the questions concerning the reports of prior misconduct did not contain more than a minimum of detail. He also advised the jury during the course of the cross-examination, and again in his charge, of the purpose of the cross-examination, and he instructed them not to be concerned with the truth of the "other matters."[4]

It was proper for the judge to permit the prosecutor to cross-examine the Boy Scout official about the allegations concerning the incident in New Hampshire. The questioning went too far, perhaps, when the witness was asked about the Boy Scout organization's investigation of the incident.[5] Whether the allegations concerning prior misconduct of the defendant were true or false was not an issue for the jury to decide. The purpose of the cross-examination, we repeat, is to "test the credibility of the witness, and to ascertain what weight or value is to be given [the witness's] testimony." *Commonwealth* v. *O'Brien*, 119 Mass. at 346. The witness, however, was the only one of the fourteen character witnesses who was asked about the New Hampshire incident. It was at the defendant's insistence that the judge allowed the testimony about the investigation in evidence. The jury learned from the witness that the Boy Scouts

---

[4] The prosecutor should not have framed the question in the form of "are you aware?" Because the testimony of the character witness is based on his familiarity with the defendant's reputation in the community, not that witness's personal knowledge of him, the proper and better form of inquiry is "have you heard?" See *Michelson* v. *United States*, 335 U.S. at 482; *Commonwealth* v. *O'Brien*, 119 Mass. at 346 (witness "may be asked if he ever heard" of specific acts of misconduct). That error was minor, however, and does not require reversal. See *Commonwealth* v. *United Food Corp.*, 374 Mass. 765, 770 (1978). In any event, the witness should not be asked, "Do you know?" See *Michelson* v. *United States, supra.*

[5] As noted, the prosecutor also referred to the investigation of the New Hampshire incident in her closing argument. Again, this was probably better left unmentioned.

had determined from their investigation that the defendant was "not guilty" and, further, that no criminal charges had been brought against the defendant. Finally, after the particular witness testified, the judge informed the jury that they were not to be concerned "about the truth in this case of those other matters . . . ." We have no reason to believe that the jury ignored the judge's instructions, especially in view of the acquittal of the defendant on one of the indictments that charged him with indecent assault and battery on a child under fourteen.

2. *Admission of Robert's statement.* The defendant argues that his conviction of indecent assault and battery on Michael should be reversed because the jury's consideration of that charge was tainted by the admission of an out-of-court statement by Robert, which the defendant alleges was used to bolster Michael's credibility.

Robert testified, in regard to the indictment that accused the defendant of an indecent assault and battery on him, that he was a member of the Boy Scout troop of which the defendant was scoutmaster. He stated that on occasions between January and April, 1983, he had been subjected to a series of indecent assaults by the defendant. He did not inform his mother of the defendant's misconduct until one evening in October, 1983. His brother, Michael, had told his mother of the indecent assault on him by the defendant the night before. The mother questioned Robert as to whether the defendant had ever exhibited such misconduct to him. He denied any misconduct by the defendant. Later, during the same evening, he told his mother that "something had happened" to him, but he would not tell her what it was. He then said to her, referring to Michael's report to her of the defendant's misconduct, "Mother, it's true" and that "she should believe" Michael.

The trial judge excluded Robert's statement. However, during his cross-examination of Robert, defense counsel repeatedly asked him whether he had reported the defendant's actions to his mother and whether he had first told her "nothing happened" then changed his story and said, "it did happen." On redirect examination of Robert, the judge ruled that the area had been "open[ed] by cross[examination]." He admitted Robert's tes-

timony about the conversation on the "limited basis" of fresh complaint. There was no error.

There is no support in the record for the defendant's assertion that the jury considered Robert's statements as vouching for Michael's credibility. The jury was twice instructed that they might consider the statements only for the purpose of corroborating Robert's testimony and only if they found the statements to qualify as a fresh complaint.[6] The statement of Robert was not presented in evidence as vouching for Michael's credibility, and the Commonwealth did not argue that theory to the jury. Further, the judge carefully instructed the jury that they must consider each indictment against the defendant separately. It is evident from their verdicts, guilty on one indictment, not guilty on the other, that they followed the judge's instructions.

3. *Denial of motion to dismiss the indictment.* The defendant claims that it was error for the court to deny his motion to dismiss the indictment naming Michael as victim, for lack of specificity as to when the offense occurred.

The date of the offense is not an element of the crime of indecent assault and battery. *Commonwealth* v. *King*, 387 Mass. 464, 467-468 (1982). *Commonwealth* v. *Atkinson*, 15 Mass. App. Ct. 200, 203 (1983). The date of the offense was narrowed by the bill of particulars to "October, 1983." Neither the victim nor his mother could recall the exact date with greater specificity. There was no error.

*Judgment affirmed.*

---

[6] Citing *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 627 (1987), the defendant argues that the judge should have exercised his discretion and excluded the testimony rather than leaving to the jury the question whether the complaint was prompt enough. As was the case in *Lagacy*, we conclude that the testimony cannot be ruled incompetent as matter of law.