COMMONWEALTH vs. WILLIAM D. BROWN.

Suffolk. September 5, 1991. - October 1, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Homicide. Evidence*, Reputation, Nonexistence of evidence. *Malice.*

On the evidence presented in a murder case, the jury were warranted in concluding there was malice in the defendant's shooting of another, and the defendant was not entitled to a required finding of not guilty on the murder indictment. [117]

At the trial of indictments the judge correctly denied the defendant's motion in limine, which sought to prevent the Commonwealth from cross-examining the defendant's character witnesses concerning the defendant's reputation for truthfulness. [117-118]

At a murder trial no error appeared in the judge's instructions on the element of malice. [118-119]

In a criminal case the judge properly declined to give an instruction requested by the defendant that an inference adverse to the Commonwealth could be drawn from the failure of the police to conduct certain scientific tests on the defendant's shirt, where there was no evidence that the police ever had possession of the shirt. [119]

INDICTMENTS found and returned in the Superior Court Department on September 15, 1987.

The cases were tried before *Sandra L. Hamlin*, J.

*Elliot M. Weinstein* for the defendant.

*Lauren Inker*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant appeals from his convictions of murder in the second degree, assault and battery by means of a dangerous weapon (two indictments), and unlawfully carrying a firearm. We transferred the case to this court on our own motion. We affirm the convictions.

The criminal activities in this case occurred at a bar in Chelsea during the early morning hours of July 18, 1987. A

jury could have found that the defendant was not a stranger to the bar and occasionally "help[ed] the barmaids out." On this occasion, the defendant helped a barmaid at closing time by collecting glasses from the tables. To expedite his task, the defendant announced to those in the back room, "Drink up your fucking drinks. I want to go home tonight. Let's go. It's time to go home." This provocative declaration evoked from a patron, one Doucette (whose death resulted in the murder indictment) the question, "Are you talking to me?" The defendant responded, "Do you want to fuck with me? Fuck with me now." The defendant then fumbled in his jacket, extracted a pistol, and pushed it into the area of Doucette's stomach. He fired twice.

Another patron, one Zackular, who was standing nearby, grappled with the defendant, pulling him to the floor. The defendant retaliated by shooting him in the calf and after Zackular stood up, while he was leaning against the bar, the defendant shot him twice in the thigh.

The terror continued when still another patron, one Ciulla, tried to take the gun from the defendant's hand while the latter was on the floor with Zackular. The defendant shot Ciulla in the right index finger and the stomach and, when Ciulla fell to the floor, the defendant shot Ciulla again, this time in the left hip. A group of customers then chased the defendant out of the bar.

A police officer came upon the scene and was told that there had been a shooting in the bar. He was given a description of the defendant. The officer found the defendant in a nearby doorway. When the police officer frisked him, the defendant said, "I'm the guy who did it." The defendant had "puncture wounds" on his right side, a wounded knee, and abrasions on his head.

The defendant raises four issues: (1) the denial of his motion for a required finding of not guilty on the murder indictment at the close of the Commonwealth's case; (2) the denial of his motion in limine to prevent the Commonwealth from cross-examining the defendant's character witnesses concerning the defendant's military record; (3) error in the charge to

the jury concerning malice; and (4) the refusal of the judge to instruct the jury concerning the Commonwealth's failure to conduct certain scientific tests.

1. *The denial of the defendant's motion for a required finding of not guilty.* The defendant in a criminal case is entitled to a required finding of not guilty if the Commonwealth fails to introduce some evidence which would satisfy a rational trier of fact of each element of the crime beyond a reasonable doubt. *Commonwealth* v. *Walker*, 401 Mass. 338, 340 (1987).

There is no merit to the defendant's argument for such a finding in the face of the testimony of witnesses who saw the defendant pull a gun from his jacket pocket and shoot Doucette and the others. From the circumstances, the jury were warranted in concluding that there was malice. The jury were not required to accept the defendant's version which calls for the conclusion that he was acting out of self-defense.

The defendant's position is that Doucette lunged at him and was on top of him when he shot Doucette in self-defense. The defendant argues that, based on the testimony of the medical examiner as to the path of the bullet, the defendant's theory of the case was sustained and, therefore, a required finding of not guilty should have been ordered.[1] However, the jury were free to reject this theory and that part of the testimony of the medical examiner.

2. *Motion in limine.* When defense counsel told the judge that he was going to call witnesses who would testify to the reputation of the defendant for truthfulness, he asked the judge to rule that the Commonwealth not be permitted to cross-examine these witnesses about false statements made by the defendant regarding his military service record. The defendant planned to call three character witnesses. The judge conducted a voir dire of one of these three witnesses in

---

[1]The chief medical examiner opined that the person who discharged the gun had to be in a position to place the muzzle of the gun "above [the victim], to the right, very slightly in front." Defense counsel argued that this opinion bolstered the defendant's position that he shot the victim as the victim jumped on him.

order to decide whether the Commonwealth should be permitted to interrogate the witnesses on the question of the defendant's giving allegedly false statements as to his military record. At the conclusion of the voir dire examination of this witness, defense counsel represented to the judge that the other two witnesses would testify quite similarly.

The Commonwealth has a right to cross-examine a witness who testifies to the reputation of the defendant for truthfulness on the issue of his reputation for falsehood in connection with his military record. The language in the case of *Commonwealth* v. *Montanino*, 27 Mass. App. Ct. 130, 136 (1989), to the effect that a trial judge may permit cross-examination on matters that are "inconsistent or conflict with the character trait to which the witness has testified" is in point.

In *Montanino*, the Appeals Court said, *supra* at 137: "The credibility of the witness is tested in the following manner — if the witness states that he has not heard of the report of prior misconduct, his professed knowledge of the defendant's reputation in the community may be doubted by the jury or, if he states that he has heard of the report but still testifies that the defendant's reputation is good in the community, the jury may consider whether the witness is fabricating or whether the community standards in regard to character are too low." These principles are compellingly applicable to the instant case.

3. *Jury instruction on malice.* The defendant complains that the judge, after correctly instructing the jury on the nature of malice and the burden of the Commonwealth to prove it beyond a reasonable doubt, "depreciated the burden . . . by setting forth legal concepts that would negate the legal existence of malice without correspondingly emphasizing that the proof of malice was independent and not necessarily mutually exclusive with each of these concepts of negation."

A careful reading of the judge's instructions reveals that, after setting forth the elements of murder, she explained the nature of each element, including malice. The instruction correctly concluded that malice may not be inferred "if the

use of a dangerous weapon was unintentional or accidental." However, immediately following these words, the judge said, "[T]he burden of proof is on the Commonwealth to prove beyond a reasonable doubt that the use was not unintentional and was not accidental." The jury were also instructed that they "may consider the defendant's voluntary intoxication by the use of alcohol" on the day of the shooting in determining whether the defendant acted with malice. Nowhere does the judge belittle the need for evidence of malice and a reading of the entire charge in this connection reveals no error.

4. *Refusal to give requested instruction on Commonwealth's failure to conduct tests.* In the case of *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980), the judge instructed the jury that the nonexistence of evidence of certain scientific tests was not to be considered in reaching a verdict. In that case, the defendant contended that the police had contrived much of the case against him and their failure to conduct certain scientific tests was part of the contrivance. *Id.* at 485. We held that the judge's instructions were so prejudicially erroneous that a new trial was required. *Id.* We said that "[t]he fact that certain tests were not conducted or certain police procedures not followed could raise a reasonable doubt as to the defendant's guilt in the minds of the jurors." *Bowden, supra* at 486.

The present case is easily distinguishable from *Bowden.* There the judge said categorically that the failure to conduct the tests could *not* be considered. *Id.* at 485. In the instant case, the judge simply declined to instruct the jury that an inference adverse to the Commonwealth could be drawn from the failure of the police to conduct the tests. The defendant argues that the Commonwealth should have conducted a test on Doucette's shirt. However, there is nothing in the record to indicate that Doucette's shirt was ever in the custody of the police.

*Judgments affirmed.*